UNITED STATES DISTRICT COURT
for the SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
UNITED STATES OF AMERICA,                :

     - against -                              98 Cr. 1023 (LAK)
                                                                                                                    :

Hage, et al., includ.
AHMED KHALFAN GHAILANI

                                                    :
                         Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x


# MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO PRESERVE CIA BLACK SITES

Peter Enrique Quijano, Esq.
Quijano & Ennis, P.C.
381 Park Avenue South, Suite 701
New York, New York 10016
Tel: (212) 686-0666
Fax: (212) 686-8690

Michael K. Bachrach, Esq.
276 Fifth Avenue, Suite 501
New York, New York 10001
Tel: (212) 929-0592
Fax: (866) 328-1630

Gregory E. Cooper, Esq.
20 Vesey Street, Suite 400
New York, New York 10007
Tel: (212) 608-4828

*Attorneys for Ahmed Khalfan Ghailani*

```
UNITED STATES DISTRICT COURT
for the SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
UNITED STATES OF AMERICA,           :

        - against -                 98 Cr. 1023 (LAK)
                                    :
Hage, et al., includ.
AHMED KHALFAN GHAILANI
                                    :
            Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
```

## Background

Defendant Ahmed Khalfan Ghailani submits this memorandum of law in support of his notice of motion, seeking an ORDER preserving CIA Black Sites where he was detained.

Defendant Ahmed Khalfan Ghailani is charged in a 308-count Indictment, which accuses him, <u>inter alia</u>, of participating in the conspiracy to bomb the United States Embassies in Kenya and Tanzania. Several of the counts carry the possibility of the death penalty.

The defendant was detained by Pakistani police and turned over to the United States government in August 2004. He was kept in secret and held and questioned outside of the United States in a separate program operated by the Central Intelligence Agency ("CIA") until President Bush announced his transfer to Guantanamo Bay, Cuba, on September 6, 2006. While detained at these Black

Sites, it is believed that the defendant was interrogated and made statements after being subjected to a "harsh regime employing a combination of physical and psychological ill-treatment with an aim of obtaining compliance and extracting information" (Exhibit B at 4).

This case is subject to the Confidential Information Protective Act ("CIPA"), and as such the defendant's Legal Team must first obtain the appropriate level of security clearance **before** it is permitted to review any document or object which is considered *Classified*.  This would include: any documentary record of when and where the defendant had been detained; what treatment and conditions he was subjected to while detained; and, of course, what statements he made while detained and subjected to the myriad forms of treatment and conditions.

Until the defendant's Legal Team is granted access to and have reviewed these documents and objects, they are in no position to file any motion which would address the admissibility of any statements obtained from the defendant. The concern is that by the time the defendant's team obtain the necessary security clearances the CIA Black Sites will have been "decommissioned" or destroyed, thereby severely prejudicing the defendant's right to litigate the voluntariness, reliability, and admissibility of his statements.

In addition, the inspection of the CIA Black Sites is directly relevant and extremely important for the presentation of mitigation evidence at both the pre-authorization stage and any future penalty or sentencing phase or proceedings.

Finally, the defendant anticipates filing, in the near future and before his Legal Team has obtained the necessary security clearance, a formal Fed.R.Crim.P. 16 request for Discovery and Inspection of, inter alia, the defendant's statements and the opportunity to inspect the CIA Black Sites where the defendant was detained and interrogated.

## Discussion

The Due Process Clause of the Fifth Amendment requires the Government to disclose to criminal defendants favorable evidence that is material either to guilt or to punishment. See United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392 (1976); Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194 (1963). Under the Due Process Clause of the Fifth Amendment, criminal prosecutions must comport with prevailing notions of fundamental fairness. This standard of fairness requires that criminal defendants be afforded a meaningful opportunity to present a complete defense. See California v. Trombetta, 467 U.S. 479, 485, 104 S.Ct. 2528, 2532 (1984) (examining Due Process under analogous clause of the Fourteenth Amendment). To safeguard that right, the Supreme Court developed "what might

loosely be called the area of constitutionally guaranteed access to evidence." United States v. Valenzuela-Bernal, 458 U.S. 858, 867, 102 S.Ct. 3440, 3447 (1982). Taken together, this group of constitutional privileges delivers exculpatory evidence into the hands of the accused, thereby protecting the innocent from erroneous conviction and ensuring the integrity of our criminal justice system.

When the Government is in possession of relevant and important evidence, it has a duty to protect that evidence for use at trial. As the Trombetta Court stated:

> Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to **evidence that might be expected to play a significant role in the suspect's defense**. To meet this standard of Constitutional materiality, see, U.S. v. Augurs, 96 S.Ct. at 2400, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by any other reasonably available means.

103 S.Ct. at 2534. To meet this standard of constitutional materiality, see Agurs, 96 S.Ct. at 2400, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.

Further, because the Indictment charges the defendant with crimes that make him eligible for the death penalty, the Eighth Amendment imposes a heightened

5

standard "for reliability in the determination that death is the appropriate punishment in a specific case." See <u>Woodson v. North Carolina</u>, 428 U.S. 280, 305, 96 S.Ct. 2978, 2991 (1976); <u>see also</u> <u>United States v. Karake</u>, 370 F.Supp.2d 275 (D.D.C. 2005) (discussing guiding principals relevant to discovery in capital trials).

In <u>Karake</u>, the court explained:

> In particular, the Court in <u>Wiggins</u> referenced the ABA Guideline which governs the investigatory duties of counsel with respect to the penalty phase of a capital trial, quoting its requirement that counsel must " 'discover *all reasonably available* mitigating evidence and evidence to rebut any aggravating evidence that may be introduced by the prosecutor.' " <u>Wiggins</u>, 539 U.S. at 524, 123 S.Ct. 2527 (quoting ABA Guidelines 11.4.1(C), p. 93) (emphasis in original). Since <u>Wiggins</u>, these Guidelines have been revised to be even more exacting insofar as they require counsel "to seek information that ... rebuts the prosecution's case in aggravation," Guideline 10.11(A), and to "determine at the earliest possible time what aggravating factors the prosecution will rely upon in seeking the death penalty and *what evidence will be offered in support thereof*." <u>Id.</u> at 10.11(H) (emphasis added).

<u>Karake</u>, 370 F.Supp.2d at 277-78 (emphasis in original).

**A.   <u>Mitigation</u>**

The ICRC Rpt. (Exhibit B) states that 14 High Value Detainees, including the defendant, who were in CIA custody and detained in Black Sites, were

interrogated and subjected to myriad methods of ill-treatment, including: continuous solitary confinement; suffocation by water; prolonged standing, beatings by use of collar; confinement in a box; prolonged nudity; sleep deprivation; exposure to cold temperature and cold water; prolonged use of handcuffs and shackles; threats; forced shaving; and deprivation of solid food. In any penalty or sentencing phase proceeding, the defendant has the right to present mitigating evidence and factors, including "factors in the defendants background, record, or character or any other circumstance of the offense that mitigate against imposition of the death sentence." 18 U.S.C. § 3592(a)(8); see also 18 U.S.C. § 3553(a)(1) (in non-capital sentencing proceedings the court "shall consider ... the history and characteristics of the defendant"). Providing a trier of fact or the prosecuting authority with a detailed and accurate representation of the physical sites where the defendant was subjected to the aforementioned ill-treatment in conjunction with or surrounding his interrogation and the subsequent extraction of statements is clearly a mitigating factor and evidence.

### B.    Admissibility of Statements

Clearly, the voluntariness of any statements by the defendant, which were obtained either while detained in CIA Black Sites, or after having been detained in CIA Black Sites and subjected to the aforementioned forms of ill-treatment, will be

a critical threshold question.

A statement is "involuntary" under the Fifth Amendment if it is involuntary "within the meaning of the Due Process Clause." See Oregon v. Elstad, 470 U.S. 298, 304, 105 S.Ct. 1285 (1985). For a statement to be involuntary under the Due Process Clause, it must be "extracted by ... threats or violence", or "obtained by ... direct or implied promises" or "the exertion of ... improper influence." Hutto v. Ross, 429 U.S. 28, 30, 97 S.Ct. 202 (1976). "A confession is involuntary and subject to suppression when induced by such duress or coercion, express or implied, that the accused's 'will has been overborne and his capacity for self-determination critically impaired.' " U.S. v. Wertz, 625 F.2d 1128, 1133-34 (4th Cir. 1980) (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 225, 93 S.Ct. 2041(1973). In order to determine whether a statement is "involuntary," courts must examine the "totality of the circumstances," including a defendant's individual characteristics and background, the setting in which the statement was obtained, and the details of the interrogation or interview. See Haynes v. Washington, 373 U.S. 503, 513-14, 83 S.Ct. 1336 (1963). Among the factors that courts may consider are: (1) whether the officer conducting the interrogation harmed or threatened to harm the defendant if he or she did not answer the officer's questions; (2) whether the officer deprived the defendant of anything; (3)

8

whether the defendant was subjected to a lengthy period of interrogation or isolation; and (4) whether the officer tried to deceive the defendant. See United States v. Ellie, 111 F.3d 1135, 1143 (4th Cir. 1997).

Further, since this is a capital case, any discussion of the admissibility of evidence must reflect upon the admissibility of such evidence during the potential penalty phase of the proceedings. When discussing the admissibility of evidence during the penalty phase of capital trials, it is widely understood that the Federal Rules of Evidence do not apply and instead give way to the rules promulgated under the Federal Death Penalty Act ("FDPA"), 18 U.S.C. §§ 3591, et seq. See United States v. Fell, supra, 360 F.3d 135, 145-46 (2d Cir. 2004); see also United States v. Jones, 132 F.3d 232, 242 (5th Cir. 1998) (explaining that the Supreme Court has "recognized that the defendant must be given the opportunity to introduce information regarding mitigating factors, without traditional evidentiary restraints, in order to provide the jury with the fullest possible information about the defendant"), citing, Gregg v. Georgia, 428 U.S. 153, 204, 96 S.Ct. 2909, 2939 (1976); Jurek v. Texas, supra, 428 U.S. 262, 276, 96 S.Ct. 2950, 2958 (1976).

One principal difference between capital and non-capital trials is the standard applied to determining probative value versus prejudicial effect: in a non-capital case Fed.R.Evid. 403 is applied, whereas in a capital case 18 U.S.C. §

3593(c) is applied. See United States v. Tavares, Docket No. 04 Cr. 156 (JBW), Slip Copy, 2006 WL 1875339 (E.D.N.Y. July 5, 2006) (Weinstein, J.). Rule 403 of the Federal Rules of Evidence permits exclusion of evidence if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence" (emphasis added). On the other hand, 18 U.S.C. 3593(c) permits the exclusion of evidence when its "probative value is [merely] outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury," and deletes the limitation permitted in consideration of "undue delay, waste of time, or needless presentation of cumulative evidence." "Title 18's FDPA thus raises the bar for admission of prejudicial evidence." Tavares, 2006 WL 1875339, at *17-*18 (emphasis added). "However, the FDPA eliminates considerations of undue delay, waste of time and needless presentation of cumulative evidence from the court's calculus," instead the Court's primary concern is whether the "probative value is outweighed by the danger of prejudice." United States v. Sampson, 335 F.Supp.2d 166, 177 (D.Mass. 2004).

As further explained by the Second Circuit in Fell, 18 U.S.C. § 3593(c) permits "the jury [to] have before it all possible relevant information about the

individual defendant whose fate it must determine." Fell, 360 F.3d at 144, quoting, Jurek v. Texas, supra, 428 U.S.262, 276, 96 S.Ct. 2950, 2958 (1976). Indeed, the Supreme Court has held that "[v]irtually no limits are placed on the relevant mitigating evidence a capital defendant may introduce concerning his own circumstances." Tennard v. Dretke, 124 S.Ct. 2562, 2570 (2004) (emphasis added) (also concluding that the jury must be given an effective vehicle with which to weigh the mitigating evidence so long as the defendant has met a "low threshold for relevance"). This prescription invariably favors the defense. Since "'heightened reliability' is essential to the process of imposing a death sentence … in order to achieve such 'heightened reliability,' more evidence, not less, should be admitted on the presence or absence of aggravating and mitigating factors." Fell, 360 F.3d at 143 (emphasis in original).

Preserving the CIA Black Sites where the defendant was detained, made statements, and subjected to the type of conditions and methods described in the ICRC Rpt. (Exhibit B), is clearly necessary in order that a Court may eventually make an informed determination as to the voluntariness and admissibility of such statements.

**Conclusion**

The destruction or "decommission" of these sites will unfairly prejudice the defendant's due process right to present a complete defense. The United States Government has publicly admitted its intention to destroy or "decommission" relevant and critical evidence. The evidence – the CIA Black Sites themselves – is of a nature that the defendant would be absolutely unable to obtain comparable evidence by any other reasonably available means.

Further, there is a strong likelihood that the CIA Black Sites will be destroyed before the defendant's Legal Team can obtain the security clearance necessary to inspect such sites. As such, it is imperative that the Government be required to maintain these sites and all related information at least until the defendant's entitlement to access to the information can be appropriately determined by the Court.

Accordingly, the defendant AHMED KHALFAN GHAILANI respectfully requests that the Court ORDER the Government to preserve any site in which the defendant was detained until such time as the defense has had a meaningful opportunity to litigate the issue of the defendant's right to discover and inspect such sites and, if SO ORDERED, the opportunity to actually discover and inspect any such site and accurately document the evidence for use during the pre-authorization stage and at trial.

Dated:  New York, New York
         June 30, 2009

                                      Respectfully submitted,

                                      *Peter Quijano*

                                      PETER ENRIQUE QUIJANO, ESQ.
                                      Quijano & Ennis, P.C.
                                      381 Park Avenue South, Suite 701
                                      New York, New York 10016
                                      Tel: (212) 686-0666
                                      Fax: (212) 686-8690

                                      MICHAEL K. BACHRACH, ESQ.
                                      276 Fifth Avenue, Suite 501
                                      New York, New York 10001
                                      Tel: (212) 929-0592
                                      Fax: (866) 328-1630

GREGORY E. COOPER, ESQ.
20 Vesey Street, Suite 400
New York, New York 10007
Tel: (212) 608-4828

*Attorneys for Ahmed Khalfan Ghailani*