UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------
                                                    :
UNITED STATES OF AMERICA,                           :
                                                    :
                                                    :
against                                             :        S10 98 Crim. 1023 (LAK)
                                                    :
                                                    :
AHMED KHALFAN GHAILANI,                              :        **PARTICIPATION AT ORAL**
                                                    :        **ARGUMENT REQUESTED**
                                                    :
                                                    :
            Defendant.                               :
                                                    :
---------------------------------------------------------
_____

**BRIEF OF THE CENTER FOR CONSTITUTIONAL RIGHTS AS *AMICUS CURIAE* SUPPORTING DEFENDANT AHMED GHAILANI'S MOTION TO DISMISS THE INDICTMENT**
_____

J. Wells Dixon                          Andrew Weissmann
Shayana D. Kadidal                      Brian J. Fischer
CENTER FOR CONSTITUTIONAL RIGHTS        Daniel B. Tehrani
666 Broadway                            JENNER & BLOCK, LLP
7th Floor                               919 Third Avenue, 37th Floor
New York, NY 10012                      New York, NY 10022-3908
(212) 614-6464 (Phone)                  (212) 891-1600 (Phone)
(212) 614-6499 (Fax)                    (212) 891-1699 (Fax)

*Counsel for Center for Constitutional Rights*        *Counsel for* Amicus Curiae

# TABLE OF CONTENTS

INTEREST OF *AMICUS CURIAE* ................................................................................ 1

SUMMARY OF ARGUMENT ....................................................................................... 2

ARGUMENT .................................................................................................................. 4

I.   THE GOVERNMENT DEPRIVED GHAILANI OF HIS RIGHTS UNDER THE
     FEDERAL RULES OF CRIMINAL PROCEDURE AND THE SPEEDY TRIAL
     ACT .................................................................................................................... 5

     A.   The Federal Rules of Criminal Procedure and the Speedy Trial Act
          Provide a Comprehensive Scheme for the Swift Administration of Justice ....... 5

     B.   The Government's Five-Year Delay in Presenting Ghailani to a United
          States Magistrate Violated Federal Rules of Criminal Procedure 5 and 9 ........ 6

     C.   The Government's Five-Year Delay Violated the Speedy Trial Act ................. 10

     D.   The Government's Five-Year Delay Warrants Dismissal Under Federal
          Rule of Criminal Procedure 48 .................................................................... 15

     E.   The Indictment Should Be Dismissed With Prejudice ................................... 18

     F.   The Government Cannot Prevail on a Paper Record ....................................... 20

II.  THE GOVERNMENT HAS VIOLATED GHAILANI'S SIXTH AMENDMENT
     RIGHT TO A SPEEDY TRIAL ......................................................................... 21

     A.   Deliberate, Protracted Denial of Trial Is Fundamentally Incompatible With
          the Sixth Amendment .................................................................................. 21

     B.   Ghailani Has Suffered an "Extraordinary Delay" ......................................... 23

     C.   The Government Cannot Justify the "Extraordinary Delay" ........................... 24

          1.   The Delay in Bringing Ghailani to Trial Was Deliberate ....................... 26

          2.   Even if the Court Finds the Government's Tactics Not Improper, the
               Delay Should Still Be Counted Against the Government ......................... 28

          3.   National Security Concerns Do Not Justify Denying Ghailani Article
               III Process During Five Years of Detention ......................................... 31

     D.   Ghailani Has Not Waived His Right to a Speedy Trial .................................. 32

     E.   Ghailani Has Been Presumptively Prejudiced By the "Extraordinary
          Delay" ....................................................................................................... 33

F.  The Government's Violation of Ghailani's Sixth Amendment Right to a
    Speedy Trial Necessitates Dismissal of the Indictment With Prejudice...........................35

CONCLUSION..........................................................................................................................35

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

Cᴀsᴇs

*Arrant v. Wainwright*,
    468 F.2d 677 (5th Cir. 1972) ...................................................................26, 27,31

*Barker v. Wingo*,
    407 U.S. 514, 92 S. Ct. 2182 (1972).............................................. *passim*

*Boumediene v. Bush*,
    553 U.S. --, 128 S. Ct. 2229 (2008) .........................................................1

*Cain v. Smith*,
    686 F.2d 374 (6th Cir. 1982) ..................................................... *passim*

*Corley v. United States*,
    -- U.S. --, 129 S. Ct. 1558 (2009) ......................................................7, 8

*Dickey v. Florida*,
    398 U.S. 30, 90 S. Ct. 1564 (1970)........................................................22

*Doggett v. United States*,
    505 U.S. 647, 112 S. Ct. 2686 (1992)........................................... *passim*

*Hamdan v. Rumsfeld*,
    548 U.S. 557, 126 S. Ct. 2749 (2006)....................................................2, 5

*Hamdi v. Rumsfeld*,
    542 U.S. 507, 124 S. Ct. 2633 (2004)........................................... *passim*

*Herring v. United States*,
    555 U.S. --, 129 S. Ct. 695 (2009) .......................................................18

*In re Parrish*,
    782 F.2d 325 (2d Cir. 1986)...............................................................28

*In re Terrorist Bombings of U.S. Embassies in East Africa*,
    552 F.3d 92 (2d Cir. 2008)...........................................................30, 31

*In re Terrorist Bombings of U.S. Embassies in East Africa*,
    552 F.3d 177 (2d Cir. 2008)..............................................................31

*Klopfer v. North Carolina*,
    386 U.S. 213, 87 S. Ct. 988 (1967).........................................................................4

*Mallory v. United States*,
    354 U.S. 449, 77 S. Ct. 1356 (1957)........................................................................8

*Rasul v. Bush*,
    542 U.S. 466, 124 S. Ct. 2686 (2004).......................................................................1

*Rock v. Arkansas*,
    483 U.S. 44, 107 S. Ct. 2704 (1987)........................................................................34

*Rumsfeld v. Padilla*,
    542 U.S. 426, 124 S. Ct. 2711 (2004).......................................................................2

*Sanders v. City of Houston*,
    543 F. Supp. 694 (S.D. Tex. 1982)..........................................................................8

*Simpkin v. United States*,
    715 F.2d 34 (2d Cir. 1983)..................................................................................28

*Strunk v. United States*,
    412 U.S. 434, 93 S. Ct. 2260 (1973)..................................................................23, 35

*United States v. Avalos*,
    541 F.2d 1100 (5th Cir. 1976) ..............................................................................27

*United States v. Ballam*,
    70 F.3d 1280, 1995 WL 710498 (9th Cir. 1995) .....................................................20, 32

*United States v. Balochi*,
    527 F.2d 562 (4th Cir. 1976) ...............................................................................15

*United States v. Beckom*,
    324 F. Supp. 253 (S.D.N.Y. 1971).........................................................................17

*United States v. Benatta*,
    No. 01-Cr-247E, 2003 WL 22202371 (W.D.N.Y. Sept. 12, 2003) ...........................12, 13, 15

*United States v. Bergfeld*,
    280 F.3d 486 (5th Cir. 2002) ........................................................................24, 29, 33

*United States v. Bin Laden*,
    156 F. Supp. 2d 359 (S.D.N.Y. 2001).....................................................................31

*United States v. Bin Laden*,
    92 F. Supp. 2d 225 (S.D.N.Y. 2000).......................................................................30

*United States v. Blanca Perez*,
    310 F. Supp. 550 (S.D.N.Y. 1970)........................................................................17

*United States v. Brenna*,
    878 F.2d 117 (3d Cir. 1989)..............................................................................14

*United States v. Brown*,
    169 F.3d 344 (6th Cir. 1999) .................................................................24, 25, 35

*United States v. Correa*,
    182 F. Supp. 2d 326 (S.D.N.Y. 2001).................................................................14

*United States v. Carini*,
    562 F.2d 144 (2d Cir. 1977).................................................................23, 24, 29

*United States v. Contreras*,
    197 F. Supp. 2d 1173 (N.D. Iowa 2002)............................................................13

*United States v. Ebbers*,
    458 F.3d 110 (2d Cir. 2006).............................................................................21

*United States v. Egan*,
    501 F. Supp. 1252 (S.D.N.Y. 1980)....................................................................9

*United States v. Foxman*,
    87 F.3d 1220 (11th Cir. 1996) .........................................................................20

*United States v. Fullwood*,
    86 F.3d 27 (2d Cir. 1996) .................................................................................5

*United States v. Furey*,
    514 F.2d 1098 (2d Cir. 1975)...........................................................................23

*United States v. Gambino*,
    59 F.3d 353 (2d Cir. 1995).........................................................................34, 35

*United States v. Garcia-Echaverria*,
    374 F.3d 440 (6th Cir. 2004) ...........................................................................10

*United States v. Giambrone*,
    920 F.2d 176 (2d Cir. 1990).........................................................................19, 20

*United States v. Govan*,
    No. 98 CR. 565, 1998 WL 889067 (S.D.N.Y. Dec. 18, 1998) ..............................19

*United States v. Guevara-Umana*,
    538 F.3d 139 (2d Cir. 2008)...........................................................................10

*United States v. Hay*,
    187 F. Supp. 2d 653 (N.D. Tex. 2002) ...............................................................25

*United States v. Hoo*,
    825 F.2d 667 (2d Cir. 1987)............................................................................5

*United States v. Ingram*,
    446 F.3d 1332 (11th Cir. 2006) .................................................... *passim*

*United States v. Janik*,
    723 F.2d 537 (7th Cir. 1983) ........................................................................14

*United States v. Johnson*,
    467 F.2d 630 (2d Cir. 1972)............................................................................8

*United States v. Kelly*,
    45 F.3d 45 (2d Cir. 1995) ..............................................................................14

*United States v. Lara*,
    520 F.2d 460 (D.C. Cir. 1975) ....................................................................26

*United States v. Marion*,
    404 U.S. 307, 92 S. Ct. 455 (1971)........................................................5, 13, 21

*United States v. Marrero*,
    450 F.2d 373 (2d Cir. 1971)............................................................................9

*United States v. Mora*,
    No. 04 CR. 00530 (LAP), 2005 WL 1354042 (S.D.N.Y. June 7, 2005) ................................19

*United States v. Morgan*,
    Crim. No. H-89-73 (PCD), 1990 WL 71350 (D. Conn. Feb. 13, 1990) ....................................7

*United States v. New Buffalo Amusement Corp.*,
    600 F.2d 368 (2d Cir. 1979)...................................................................24, 29, 30, 32

*United States v. Noel*,
    231 F.3d 833 (11th Cir. 2000) .......................................................................10

*United States v. Osunde*,
    638 F. Supp. 171 (N.D. Cal. 1986) ...............................................................7, 9, 13

*United States v. Perez*,
    733 F.2d 1026 (2d Cir. 1984)..........................................................................7

*United States v. Perez-Perez*,
    337 F.3d 990 (8th Cir. 2003) .........................................................................10

*United States v. Perez-Torribio*,
    987 F. Supp. 245 (S.D.N.Y. 1997)......................................................................12

*United States v. Pollock*,
    726 F.2d 1456 (9th Cir. 1984) .........................................................................10

*United States v. Re*,
    335 F. Supp. 1176 (S.D.N.Y. 1972)...............................................16, 17, 27, 28

*United States v. Roberts*,
    515 F.2d 642 (2d Cir. 1975)...........................................................................30

*United States v. Rogers*,
    781 F. Supp. 1181 (S.D. Miss. 1991).............................................................27

*United States v. Rowbotham*,
    430 F. Supp. 1254 (D. Mass. 1977) ..........................................................16, 20

*United States v. Salzmann*,
    417 F. Supp. 1139 (E.D.N.Y. 1976) .......................................................15, 16, 17

*United States v. Shell*,
    974 F.2d 1035 (9th Cir. 1992) .........................................................................33

*United States v. Superville*,
    40 F. Supp. 2d 672 (D.V.I. 1999) ....................................................................10

*United States v. Taylor*,
    487 U.S. 326, 108 S. Ct. 2413 (1988)........................................................18, 19

*United States v. Thomas*,
    527 F. Supp. 261 (D.D.C. 1981) .....................................................................26

*United States v. Tunnessen*,
    763 F.2d 74 (2d Cir. 1985).............................................................................14

*United States v. Wilson*,
    11 F.3d 346 (2d Cir. 1993).............................................................................18

*United States v. Yong Bing-Gong*,
    594 F. Supp. 248 (N.D.N.Y. 1984) ...............................................................7, 20

*United States v. Zabady*,
    546 F. Supp. 35 (M.D. Pa. 1982) ..............................................................17, 20

*Vermont v. Brillon*,
    556 U.S. --, 129 S. Ct. 1283 (2009) ..........................................................25, 30

S<small>TATUTES</small>

10 U.S.C. § 810.............................................................................................................6

28 U.S.C. § 1826...........................................................................................................28

Authorization for Use of Military Force, Pub. L. No. 107-40, 115 Stat. 224 (2001) .....................6

Military Extraterritorial Jurisdiction Act, Pub. L. No. 106-523, 114 Stat. 2488, 18
    U.S.C. §§ 3261-3267 (2000)..............................................................................6

Speedy Trial Act, 18 U.S.C. §§ 3161-3174 .................................................... *passim*

Speedy Trial Act of 1974, Pub. L. No. 93-619, 88 Stat. 2076 (1975) ..........................................12

Speedy Trial Act Amendments Act of 1979, Pub. L. No. 96-43, 93 Stat. 327.............................12

F<small>EDERAL</small> R<small>ULES OF</small> C<small>RIMINAL</small> P<small>ROCEDURE</small>

Fed. R. Crim. P. 4 ......................................................................................................10

Fed. R. Crim. P. 5 ......................................................................................... *passim*

Fed. R. Crim. P. 9 ......................................................................................... *passim*

Fed. R. Crim. P. 32 .....................................................................................................6

Fed. R. Crim. P. 48 ....................................................................................... *passim*

O<small>THER</small> A<small>UTHORITIES</small>

Advisory Committee Notes, Fed. R. Crim. P. 5 ..............................................................5

Advisory Committee Notes, Fed. R. Crim. P. 48 ...........................................................15

H.R. Rep. 96-390 (1979), *as reprinted in* 1979 U.S.C.C.A.N. 805................................12

H.R. Rep. 96-390 (1979), *as reprinted in* 1979 U.S.C.C.A.N. 805................................12

Int'l Committee of the Red Cross, *ICRC Report on the Treatment of Fourteen
    "High Value Detainees" in CIA Custody,* Feb. 2007 .............................................22

International Covenant on Civil and Political Rights, Art. Mar. 23, 1976, 999
    U.N.T.S. 171 ................................................................................................5

Attorney General John Ashcroft on Military Tribunals for Terrorists, Department
    of Justice Press Conference, Nov. 14, 2001,.........................................................17

Brief for Respondent, *Rasul v. Bush*, S. Ct. Nos. 03-334, 03-343 (Mar. 2004) ...........18

Geneva Convention Relative to the Treatment of Prisoners of War, Aug. 12, 1949,
6 U.S.T. 3316, 3394, 75 U.N.T.S. 135.................................................................6

Jane Mayer, *The Black Sites: A Rare Look Inside the C.I.A.'s Secret Interrogation
Program*, The New Yorker, Aug. 13, 2007 .........................................................9

James Wm. Moore *et al., Moore's Federal Practice* (3d ed. 2009) .................................8

Motion for Preservation of Torture Evidence, *Khan v. Gates*, No. 07-1324 (D.C.
Cir.) ......................................................................................................34

Michael B. Mukasey, *Civilian Courts Are No Place to Try Terrorists*, Wall Street
Journal, Oct. 19, 2009 ...............................................................................17

Transcript, *In re Guantánamo Bay Detainee Litig.*, Misc. 08-442 (D.D.C. Dec. 12,
2008) ................................................................................................17, 18

Bob Woodward, *Detainee Tortured, Says U.S. Official*, Wash. Post, Jan. 14, 2009......................2

U.S. CONST. amend. V ......................................................................... *passim*

U.S. CONST. amend. VI......................................................................... *passim*

U.S. CONST. art. I, § 9, cl. 2 ......................................................................1

*Amicus curiae* the Center for Constitutional Rights ("CCR") respectfully submits this brief in support of Ahmed Ghailani's Motion to Dismiss the Indictment ("MDI").

## INTEREST OF *AMICUS CURIAE*

CCR is a national non-profit legal and educational organization dedicated to advancing and protecting the rights guaranteed by the United States Constitution and the Universal Declaration of Human Rights. Founded in 1966, CCR has a long history of litigating cases on behalf of those with the fewest protections and least access to legal resources. In early 2002, CCR filed the first *habeas corpus* petitions on behalf of foreign nationals detained by the Executive at the U.S. Naval Station at Guantanamo Bay, Cuba, without counsel, the right to a trial, or knowledge of the charges against them. In *Rasul v. Bush*, 542 U.S. 466, 484, 124 S. Ct. 2686, 2698 (2004), the Supreme Court held that the federal courts have jurisdiction to hear the petitioners' *habeas* challenges to the legality of their indefinite detention at Guantanamo Bay. In *Boumediene v. Bush*, 553 U.S. --, 128 S. Ct. 2229, 2261 (2008), the Supreme Court confirmed that "[i]n every practical sense Guantanamo is not abroad; it is within the constant jurisdiction of the United States." *See also Rasul*, 542 U.S. at 480, 124 S. Ct. at 2696. *Boumediene* held that the detainees' right to petition for *habeas* review is protected by the Suspension Clause of the Constitution, art. I, § 9, cl. 2, which has full effect at Guantanamo Bay, *see* 553 U.S. --, 128 S. Ct. at 2262, and "the costs of delay can no longer be borne by those who are held in custody." *Id.* at 553 U.S. --, 128 S. Ct. at 2275.

CCR currently represents numerous individuals detained at Guantanamo Bay, including former Baltimore-area resident Majid Khan, who was tortured in secret CIA detention for more than three years before he was transferred to Guantanamo Bay in September 2006. *See Khan v. Obama*, C.A. No. 06-1690 (RBW) (D.D.C.). CCR also represents Mohammed al Qahtani, a

Saudi citizen detained at Guantanamo Bay since January 2002, who was the subject of the "First Special Interrogation Plan," a regime of aggressive interrogation approved from Washington. *See Al-Qahtani v. Obama*, C.A. No. 05-1971 (RMC) (D.D.C.).  In early 2008, the government announced military commission charges against al Qahtani; all charges against him were dismissed three months later.  In January 2009, a senior U.S. official reported that al Qahtani was tortured at Guantanamo Bay between 2002 and 2003.[1]

In addition, since its victory in *Rasul*, CCR has organized and coordinated more than 500 *pro bono* lawyers from across the country to represent Guantanamo Bay detainees, and CCR has submitted *amicus* briefs in cases involving suspected "enemy combatants" held in military custody.  *See Hamdi v. Rumsfeld*, 542 U.S. 507, 124 S. Ct. 2633 (2004); *Rumsfeld v. Padilla*, 542 U.S. 426, 124 S. Ct. 2711 (2004); *Hamdan v. Rumsfeld*, 548 U.S. 557, 126 S. Ct. 2749 (2006).

## SUMMARY OF ARGUMENT

Ghailani was indicted by an arm of this Court on December 16, 1998.  After being taken into custody by Pakistani authorities in 2004, he was detained by the United States at various undisclosed locations and Guantanamo Bay.  Despite having availed itself of the federal court system to secure the indictment, the government thereafter knowingly and intentionally held Ghailani without access to counsel until 2008, and without a hearing in front of an independent judicial officer until June 9, 2009.  In stark contrast, prosecutors obtained the indictment, arrested, arraigned, tried, and had sentenced three of Ghailani's alleged co-conspirators by 2001, in a period of about three years.

Ghailani has suffered an unprecedented violation of his fundamental right to a speedy trial protected by the Federal Rules of Criminal Procedure, the Speedy Trial Act, and the United

---

[1] *See* Bob Woodward, *Detainee Tortured, Says U.S. Official*, Wash. Post, Jan. 14, 2009, at A1.

States Constitution.  If Ghailani were an American business executive indicted for securities fraud, the very idea of the government detaining him, intentionally, with no judicial scrutiny and no access to defense counsel, for five years, would be unthinkable.  That Ghailani is charged with involvement in more serious crimes -- as to which he is presumed innocent -- should not alter that conclusion.  The government's violation of Ghailani's right to a speedy trial is so pronounced that dismissal of the indictment with prejudice is warranted.

First, the government violated Federal Rules of Criminal Procedure 5 and 9.  These rules required that Ghailani be brought before a magistrate without "unnecessary delay."  The government's delay stretched to five years, far surpassing the delays of mere days that courts typically deem "unnecessary."  The government's extraordinary violation of the Rules -- committed through extended detention, interrogation, and likely torture, and compounded with deprivation of the process Ghailani was due -- requires dismissal of the indictment with prejudice.

Second, the government violated the Speedy Trial Act, which required that Ghailani be brought to trial within 70 days of the later of indictment or arraignment.  The five-year delay clearly exceeds that 70-day period, for which no time exclusion had been sought and which cannot be excused by the government's failure to arraign Ghailani in a reasonably timely manner.

Third, the Court should dismiss the indictment pursuant to Rule 48, which permits the Court to dismiss an indictment for "unnecessary delay in . . . bringing a defendant to trial."  It provides an independent basis for granting Ghailani's application, which presents precisely the sort of excessive, intentional delay that Rule 48 was designed to prevent and redress.

Fourth, the government violated Ghailani's Sixth Amendment right to a speedy trial. Constitutional speedy trial claims are evaluated under a four-factor balancing test: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of the right; and (4) prejudice to the defendant caused by the delay. Each factor weighs heavily against the government, cumulatively establishing a flagrant violation of Ghailani's right to a speedy trial.

At a minimum, Ghailani is entitled to a hearing to require the government to present evidence, subject to cross-examination, to justify its conduct and to allow Ghailani to respond, if necessary. To survive Ghailani's MDI, the government bears the burden of establishing a valid reason at the hearing for its unilateral and intentional decision to detain Ghailani for five years instead of bringing him to trial on the indictment, and that its treatment of Ghailani during that period, the length of detention, and the deprivation of essential rights, including access to counsel, did not prejudice Ghailani. The talisman of "national security" is, without evidence and scrutiny in an Article III setting, insufficient to carry this heavy burden and justify each day of the five years that Ghailani was not arraigned.

In short, having determined to forego Article III tribunals for five years, the government has only itself to blame for the Court's closing the door to the government's attempt to belatedly avail itself of this tribunal in violation of all applicable rules and the Constitution.

## ARGUMENT[2]

The right to a speedy trial is fundamental. *See Klopfer v. North Carolina*, 386 U.S. 213, 223, 87 S. Ct. 988, 993 (1967) ("We hold here that the right to a speedy trial is as fundamental as

---

[2] At this stage in the proceeding, CCR adopts the facts set forth in this Court's opinion, *United States v. Ghailani*, Nov. 18, 2009 Memorandum Opinion (hereinafter, "Mem. Op."), and defendant's MDI. If an evidentiary hearing is held, CCR requests leave to supplement its brief based on the facts adduced therein.

any of the rights secured by the Sixth Amendment."). The right is enshrined in the Sixth

Amendment to the Constitution and safeguarded by rule and statute.[3] Indeed, the Federal Rules

of Criminal Procedure, in conjunction with the Speedy Trial Act, 18 U.S.C. §§ 3161-3174

(2008), prescribe a speedy process for the entirety of a criminal case, from arrest through

sentencing. The government fatally gutted this judicial process by intentionally delaying

Ghailani's arraignment for five years.

I.    **THE GOVERNMENT DEPRIVED GHAILANI OF HIS RIGHTS UNDER THE
FEDERAL RULES OF CRIMINAL PROCEDURE AND THE SPEEDY TRIAL
ACT**

A.    **The Federal Rules of Criminal Procedure and the Speedy Trial Act Provide a
Comprehensive Scheme for the Swift Administration of Justice**

Federal Rules 5 and 9 require that, upon arrest, a defendant be brought before a judicial

officer "without unnecessary delay." Fed. R. Crim. P. 5(a)(1).[4] Where the arrest occurs outside

the United States, the defendant must be brought without unnecessary delay before a magistrate

judge, unless a statute provides otherwise. Fed. R. Crim. P. 5(a)(1)(B).[5]

---

[3] Moreover, the right to be tried without undue delay is also required under international human
rights law. *See* International Covenant on Civil and Political Rights, Art. 14, ¶ 3, Mar. 23, 1976,
999 U.N.T.S. 171 (hereinafter "ICCPR") ("In the determination of any criminal charge against
him, everyone shall be entitled to the following minimum guarantees, in full equality: (a) To be
informed promptly and in detail in a language which he understands of the nature and cause of
the charge against him; . . . (c) To be tried without undue delay." The United States is a
signatory to the ICCPR. *See Hamdan*, 548 U.S. at 633 n.66, 126 S. Ct. at 2797 n.66 (opinion of
Stevens, J.).

[4] Rule 9 governs the issuance and execution of arrest warrants upon an indictment or
information. Rule 9(c)(1)(B) requires the arresting officer to proceed in accordance with Rule
5(a)(1). "[T]he standards governing 'unnecessary delay' are identical under Rules 9(c)(1) and
5(a)." *United States v. Fullwood*, 86 F.3d 27, 30 (2d Cir. 1996). The Fifth Amendment provides
additional safeguards against government pre-indictment delay. *United States v. Marion*, 404
U.S. 307, 324, 92 S. Ct. 455, 465 (1971); *United States v. Hoo*, 825 F.2d 667, 671 (2d Cir. 1987).

[5] The clause in Rule 5 "unless a statute provides otherwise" is not relevant here. It was added as
part of 2002 amendments. The Advisory Committee Notes state that the clause reflects the
"recent enactment of the Military Extraterritorial Jurisdiction Act (Pub. L. No. 106-523, 114 Stat.
2488) [18 U.S.C. §§ 3261 – 3267 (2000)]." That act does not apply to Ghailani. *See* 18 U.S.C. §

In addition, a defendant and the public have rights under the Speedy Trial Act that commence upon the later of the date of the indictment or "the date the defendant has appeared before a judicial officer of the court in which such charge is pending." 18 U.S.C. § 3161(c)(1). Trial must commence within 70 days, subject to various statutory exclusions. *Id.* After a guilty verdict, Federal Rule of Criminal Procedure 32 requires sentencing "without unnecessary delay." Fed. R. Crim. P. 32(b)(1). Further reinforcing the right to a speedy disposition and filling in any gaps in the above-described process, Rule 48 allows a court to dismiss an indictment due to "unnecessary delay" in, *inter alia*, "bringing a defendant to trial." Fed. R. Crim. P. 48(b).

Thus, the Federal Rules of Criminal Procedure and Speedy Trial Act create a comprehensive scheme to ensure that the criminal justice process is carried out without unreasonable delay. It is against this legal regime that the government's decision to detain an indicted defendant for five years before bringing him to arraignment must be measured.

### B.    The Government's Five-Year Delay in Presenting Ghailani to a United States Magistrate Violated Federal Rules of Criminal Procedure 5 and 9

The government violated Ghailani's rights under Federal Rules 5 and 9 by causing an "unnecessary delay" in arraigning Ghailani. Whereas "[t]he predominate type of delay

---

3261(a) (applying to specified conduct "(1) while employed by or accompanying the Armed Forces outside the United States; or (2) while a member of the Armed Forces"). Nor does the act dispose of Rule 5's presentment requirement  Instead, it allows for the initial appearance to be conducted remotely, such as by telephone. *Id.* § 3265(a)(1)(B). And even if the government were to rely on the Authorization for Use of Military Force ("AUMF"), Pub. L. No. 107-40, 115 Stat. 224 (2001), it would be to no avail. The AUMF incorporates the laws of war, *see Hamdi*, 542 U.S. at 521, 124 S. Ct. at 2641-42, which also establish speedy trial rights, *see* Uniform Code of Military Justice, 10 U.S.C. § 810 (2008) ("When any person subject to this chapter is placed in arrest or confinement prior to trial, immediate steps shall be taken to . . . try him or to dismiss the charges and release him."); Geneva Convention Relative to the Treatment of Prisoners of War art. 103, Aug. 12, 1949, 6 U.S.T. 3316, 3394, 75 U.N.T.S. 135 ("Judicial investigations relating to a prisoner of war shall be conducted as rapidly as circumstances permit and so that his trial shall take place as soon as possible. . . . In no circumstances shall this confinement exceed three months.").

addressed by courts under both Rule 5(a) and Rule 9(c)(1) are delays of hours and days," *United States v. Osunde*, 638 F. Supp. 171, 176 (N.D. Cal. 1986), the delay here was a staggering five years. Ghailani was indicted on December 16, 1998. Mem. Op. at 1-2. He was taken into Pakistani custody on July 24, 2004 and thereafter transferred to exclusive United States control. *Id.* at 3-4. Ghailani was not brought before a magistrate judge until his arraignment on June 9, 2009. Jun. 9, 2009 Docket Entry.

The government bears the burden of demonstrating the necessity of pre-arraignment delays, and courts must carefully scrutinize alleged justifications. *See United States v. Morgan*, Crim. No. H-89-73 (PCD), 1990 WL 71350, at *5 (D. Conn. Feb. 13, 1990) (noting that the government bears the burden of demonstrating necessity of delay). Such a showing must be subject to a hearing at which the defendant can challenge and present evidence.

Unjustified delays of even relatively brief duration are impermissible. In *United States v. Perez*, 733 F.2d 1026 (2d Cir. 1984), for example, the Second Circuit affirmed a district court finding that a mere 23-hour delay, during a part of which a magistrate was available, was unnecessary and unreasonable. *See id.* at 1028, 1035-36. The court specifically noted that the "agents' desire to investigate other crimes is not a legitimate excuse for their failure to respect [defendant's] right to a prompt arraignment." *Id.* at 1036; *see United States v. Yong Bing-Gong*, 594 F. Supp. 248, 254 (N.D.N.Y. 1984) (finding, after an evidentiary hearing, that "the arresting officers 'had no legitimate excuse for not arraigning [defendant] promptly,'" and that the "exceedingly long twenty hour delay" violated Rule 5 (quoting *Perez*, 733 F.2d at 1036)).

Prolonged delays to extract additional information from the accused are core violations of Rule 5. *See Corley v. United States*, -- U.S. --, 129 S. Ct. 1558, 1570 (2009) ("[Rule 5's presentment requirement] stretches back to the common law, when it was 'one of the most

important' protections 'against unlawful arrest.' . . . In a world without *McNabb-Mallory*, federal

agents would be free to question suspects for extended periods before bringing them out in the

open, and we have always known what custodial secrecy leads to.  No one with any smattering

of the history of 20th-century dictatorships needs a lecture on the subject, and we understand the

need even within our own system to take care against going too far.  '[C]ustodial police

interrogation, by its very nature, isolates and pressures the individual,' and there is mounting

empirical evidence that these pressures can induce a frighteningly high percentage of people to

confess to crimes they never committed." (citations omitted) (quoting *County of Riverside v.*

*McLaughlin*, 500 U.S. 44, 60-61, 111 S. Ct. 1661, 1672 (1991) (Scalia, J., dissenting); *Dickerson*

*v. United States*, 530 U.S. 428, 435, 120 S. Ct. 2326, 2331 (2000))); *Mallory v. United States*,

354 U.S. 449, 451-53, 77 S. Ct. 1356, 1358-59 (1957) (Rule 5 requires "that the police must with

reasonable promptness show legal cause for detaining arrested persons" so as to avoid third-

degree practices); *Sanders v. City of Houston*, 543 F. Supp. 694, 701 (S.D. Tex. 1982) ("[T]he

delay of the hearing before the magistrate cannot be justified on the ground that police activity

for that period was required to investigate other unsolved crimes for which there was no probable

cause to arrest the accused.  Similarly, police cannot keep a prisoner in detention while they

attempt to find further evidence to strengthen their case against him." (citations omitted)); 24

James Wm. Moore *et al., Moore's Federal Practice*, § 605.03[2][d], at 605-35 (3d ed. 2009).

("Nor can delay in arraignment be justified on the ground that the police were seeking further

evidence to strengthen the case against the defendant or investigating crimes other than ones for

which the defendant had been detained.").

　　　　Courts have, of course, recognized the reasonableness of short delays occasioned by

administrative and transportation requirements, *see, e.g.*, *United States v. Johnson*, 467 F.2d 630,

636 (2d Cir. 1972) (nearly seven-hour delay), or magistrate unavailability, *see, e.g.*, *United States v. Marrero*, 450 F.2d 373, 375 (2d Cir. 1971) (16-hour and 40-minute delay).  But the government's five-year delay in arraigning Ghailani was not necessary for such benign purposes.[6]

Delay less egregious than here results in dismissal of the indictment with prejudice.  For example, in *Osunde*, the defendant was detained by immigration authorities for 106 days before being brought to a magistrate.  638 F. Supp. at 172-73.  The court concluded that the period "between the defendant's arrest and his first appearance before [a magistrate] was, without a doubt, a grossly unnecessary delay," and dismissed the indictment with prejudice.  *Id.* at 176-77.  Even when suppressing evidence to remedy Rule 5 violations, courts note that dismissal of the indictment would be appropriate for "outrageous conduct" that "shocks the conscience."  *United States v. Egan*, 501 F. Supp. 1252, 1263 (S.D.N.Y. 1980).

The five-year delay in Ghailani's case constitutes precisely the kind of "outrageous conduct" that warrants dismissal of the indictment with prejudice.  This was not a delay of hours or days, or even months.  The intentional delay in this case was five years, for all but one of which Ghailani was deprived counsel.  This delay was a blatant violation of Rules 5 and 9.  If an intentional five-year delay does not constitute a *per se* violation of Rule 5 warranting dismissal of the indictment, the Court, at the very least, should conduct an evidentiary hearing to examine the government's justification for choosing to flout the requirements of the Federal Rules.

---

[6] At least one commentator has suggested that the long periods of detention and deprivation of counsel at issue here were based on a fear that detainees would disclose the circumstances of their detention and interrogation, and that the government did not have a "disposal plan" as to what to do with the detainees after their "utility" had been exhausted.  *See* Jane Mayer, *The Black Sites: A Rare Look Inside the C.I.A.'s Secret Interrogation Program*, The New Yorker, Aug. 13, 2007.  Ghailani is entitled to a hearing to examine whether the government detained him – for any period of time – for such reasons.

Moreover, the government must demonstrate that the entire delay was necessary, and not simply that it had a valid justification for a portion of the delay.[7]

## C.    The Government's Five-Year Delay Violated the Speedy Trial Act

The government's five-year delay has also violated the Speedy Trial Act, which "to ensure that criminals are brought to justice promptly." *United States v. Pollock*, 726 F.2d 1456, 1459-60 (9th Cir. 1984).

The Speedy Trial Act provides explicit time periods within which the government must commence various stages of a criminal case. The Speedy Trial Act requires that the trial "shall

---

[7] The government may try to evade Rule 5 by claiming that Ghailani was not "arrested" on the criminal charges until he was transferred to this Court. Analysis of this issue is significantly impeded by the fact that the government apparently did not execute the arrest warrant, *see* Mem. Op. at 2, and the court record does not reveal when the warrant was executed, because of the government's apparent failure to return the warrant, as required by Federal Rule of Criminal Procedure 4(c)(4). In any event, such an argument requires this Court to find that, where the federal government has an outstanding arrest warrant against an individual, takes that individual into custody, detains him for five years and only then commences criminal proceedings against him, the detention does not constitute an "arrest." That cannot be countenanced.
The government's position is not aided by cases holding that civil detention does not constitute an "arrest" for purposes of Rule 5 or the Speedy Trial Act. Such cases relate to situations where charges are brought against an individual who is already in civil custody. *See, e.g.*, *United States v. Perez-Perez*, 337 F.3d 990, 993, 996-97 (8th Cir. 2003); *United States v. Noel*, 231 F.3d 833, 835-37 (11th Cir. 2000). They do not apply in situations where the federal government detains an individual subject to an outstanding arrest warrant. Moreover, even civil detention cases provide a "ruse" exception where "federal criminal officials collude with civil authorities to detain an individual pending criminal charges, such that the primary or exclusive purpose of civil detention is to hold the individual for future prosecution." *United States v. Garcia-Echaverria*, 374 F.3d 440, 451 (6th Cir. 2004); *United States v. Guevara-Umana*, 538 F.3d 139, 141-42 (2d Cir. 2008); *United States v. Superville*, 40 F. Supp. 2d 672, 674, 684-86 (D.V.I. 1999) (noting, after a hearing, that "[f]rom April 9th onwards, [defendant] was under constant criminal process, effectively arrested for Social Security fraud and detained for investigative purposes. . . . Where the civil and criminal authority employed to detain a defendant are so inextricably intertwined, the Court must review every fact that bears upon the 'unnecessary delay' proscribed by Rule 5(a) and the voluntariness of his confession given during that confinement. . . . INS delayed [defendant's] presentation to a neutral judicial officer in order to extract his confession. Although the agency had not formally arrested him for Social Security fraud, actual arrest would have imposed no further restriction on his liberty."). At a minimum, if the government wants to maintain this position, it must prove at a hearing that it was not involved in that initial arrest, or any subsequent portion of his five-year detention.

commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs."  18 U.S.C. § 3161(c)(1). Recognizing the particular need for a speedy trial where an accused is detained, the Speedy Trial Act has two specific provisions to expedite commencement of the criminal process.  Section 3161(j), which applies where a defendant is serving a term of imprisonment in a penal institution, requires the government attorney "promptly" to "undertake to obtain the presence of the prisoner for trial," or to "cause a detainer to be filed with the person having custody of the prisoner and request him to so advise the prisoner and to advise the prisoner of his right to demand trial."  *Id*. § 3161(j).  Section 3164, which applies to persons detained while awaiting trial and released persons designated as high risk, requires that the trial of such persons "be accorded priority" and "shall commence not later than ninety days following the beginning of such continuous detention or designation of high risk."  *Id*. § 3164(a), (b).

The government did not comply with these mandates.  There is no evidence that, during Ghailani's five-year detention, the United States sought to advise Ghailani of his right to demand trial.  Nor did the government commence Ghailani's trial (or even seek to commence his trial) within 90 days of his continuous detention, or comply with the 70-day requirement of section 3161(c)(1).

The government must contend that it did not violate the Speedy Trial Act because the 70-day clock did not begin until Ghailani was arraigned -- on June 9, 2009.  But the Speedy Trial Act does not countenance a five-year post-indictment, pre-arraignment detention.  The strict time requirements of the Speedy Trial Act are not so easily evaded.  Viewed in its proper context -- namely as encompassing the Rule 5 and 9 requirements -- the Speedy Trial Act includes a

requirement that an indicted defendant be arraigned without "unnecessary delay."  Indeed, given the existence of these Rules, there is no need for the Speedy Trial Act to set a strict time period within which a defendant must be arraigned, as by Rule arraignment must occur without unnecessary delay.[8]  The government's interpretation, on the other hand, would enable it to evade the Speedy Trial Act by violating Rules 5 and 9.

Just such a maneuver was rejected in *United States v. Benatta*, No. 01-Cr-247E, 2003 WL 22202371, at *12-*13 (W.D.N.Y. Sept. 12, 2003).  Benatta had been in immigration custody for three months prior to his indictment and thereafter kept in federal custody without being arraigned for another four-and-a-half-months.  *Id.* at *1-*2.  The government argued that the Speedy Trial Act had not been violated because the clock did not commence until arraignment. *See id.* at *12.  The court rejected this stratagem:

> This particular posturing by the government not only attempts to place form over substance, it also constitutes a bootstrapping argument of the most discreditable kind and is nothing more than sophistry.  By its very actions in keeping the defendant detained . . . the defendant, through no fault of his own, was prevented from appearing sooner before this Court for arraignment on the indictment, which

---

[8] The Speedy Trial Act initially contained a 10-day indictment-and-arrest-to-arraignment period and a sixty-day arraignment-to-trial time period.  *See* Speedy Trial Act of 1974, Pub. L. No. 93-619, § 101, 88 Stat. 2076 (1975).  The 1979 amendments merged these requirements into one 70-day indictment-and-arrest-to-trial period.  *See* Speedy Trial Act Amendments Act of 1979, Pub. L. No. 96-43, § 2, 93 Stat. 327, 328.  The time provision was merged, at the request of the Department of Justice, because in most cases the separate periods had little practical effect.  *See* H.R. Rep. 96-390, at 9 (1979), *as reprinted in* 1979 U.S.C.C.A.N. 805, 813.  While the combined time period provides a degree of flexibility (arraignment need not be within 10 days so long as it is not unnecessarily delayed), it does not allow the government to detain an indicted defendant for years without arraignment.

One court has rejected an invitation to read into the Speedy Trial Act a time period within which a defendant must be arraigned.  *See United States v. Perez-Torribio*, 987 F. Supp. 245, 247-48 (S.D.N.Y. 1997).  The defendant there, however, asked the court to construe the Speedy Trial Act to include an explicit 30-day period within which a defendant must be arraigned, and a 40-day arraignment to trial period.  In rejecting the argument that the 32-day delay between arrest and arraignment violated section 3161, the court did not confront whether the Speedy Trial Act must be interpreted in light of Rules 5 and 9.

was filed and made public on December 12, 2001.  The very purpose of the [Speedy Trial Act] would be defeated if the government is allowed to prevent the arraignment of the defendant by holding him in its custody and at the same time claim that the speedy trial clock has not started because the defendant has not been arraigned.  The provision set forth in 18 U.S.C. § 3161(c)(1) as to when the seventy day period commences is meant to apply to those circumstances wherein the defendant is not available for arraignment after an indictment has been returned and filed or where the defendant has caused the delay in his arraignment.  That is not the case before this Court.  Because the defendant was in the control and custody of the government on December 12, 2001 and therefore available for arraignment on the indictment, the government cannot utilize the actual arraignment date to justify its inaction in this case.  Such delay has not only caused "prejudice" to the defendant for the reasons set forth above, it has denied him his rights as provided under the [Speedy Trial Act].

*Id.*  The court dismissed the indictment with prejudice.  *Id.* at *13.[9]  Consequently, where, as here, the government has delayed unnecessarily in arraigning a defendant, the 70-day trial clock begins prior to the period of unnecessary delay.[10]

Moreover, the government's delay cannot be excused from the 70-day requirement under any time exclusion provided by section 3161(h).  Even if the government sought to justify a five-

---

[9] Analogously, to close the "gap" between the substantive provision of 18 U.S.C. § 3161(b) (which requires an indictment to be filed within 30 days after an individual is arrested) and the remedy provided by section 3162, courts have interpreted the Speedy Trial Act to effectuate its purpose and avoid unreasonable results.  Section 3162, which provides the remedy if an indictment is not filed within 30 days, only applies "in the case of any individual against whom a complaint is filed charging such individual with an offense," and only requires that the "charge against that individual contained in such complaint shall be dismissed."  *Id.* § 3162(a).  The government has claimed that the Speedy Trial Act does not provide a remedy if an individual is arrested and detained, so long as a complaint is never filed.  In *United States v. Contreras*, 197 F. Supp. 2d 1173 (N.D. Iowa 2002), however, the court rejected such an interpretation and "refuse[d] to conclude that a prisoner can be held for more than thirty (30) days and have the rule be that there is no violation of his rights because 'we never filed any charges.'"  *Id.* at 1176;  *see also Osunde*, 638 F. Supp. at 174 (arriving at a similar conclusion and finding "quite repugnant" any interpretation that would allow an individual to be "taken into custody, held for an indeterminate period of time without charge, then charged and indicted within thirty days, and have no redress under the Speedy Trial Act . . . . Clearly such a result is contrary to the spirit, if not the letter, of the Speedy Trial Act.").

[10] Indeed, not only does the delay raise Sixth Amendment speedy trial concerns, *see infra*, Part II, but it also raises serious Fifth Amendment due process issues, *see Marion*, 404 U.S. at 324-24, 92 S. Ct. at 465-66.

year "ends of justice" continuance, *see id.* § 3161(h)(7), it is black-letter law that such an

exclusion cannot be applied retroactively.  *See United States v. Tunnessen*, 763 F.2d 74, 77 (2d

Cir. 1985) ("The Act plainly contemplates that the district 'judge must determine *before granting*

*the continuance* that society's interest in meeting the "ends of justice" outweighs the interest of

the defendant and of society in achieving speedy trial.' . . . Congress intended that the decision to

grant an ends-of-justice continuance be prospective, not retroactive; an order granting a

continuance on that ground must be made at the outset of the excludable period." (quoting S.

Rep. No. 93-1021, at 39 (1974)) (emphasis in original)); *see also United States v. Kelly*, 45 F.3d

45, 47 (2d Cir. 1995); *United States v. Brenna*, 878 F.2d 117, 122 (3d Cir. 1989); *United States*

*v. Correa*, 182 F. Supp. 2d 326, 328 (S.D.N.Y. 2001).[11]

 Requiring prospective court approval of an exclusion prevents the government from

doing what it did here: unilaterally determining that the "ends of justice" excuse a delay of

indeterminate length, without enabling any judicial oversight or providing the defendant with an

opportunity to contest the delay before the harm is inflicted.  The government knew this rule but

chose to disregard it and thereby deprive the defendant and this Court of their important roles in

ensuring compliance with the Speedy Trial Act.  Accordingly, the government cannot now

obtain an "ends of justice" exclusion to the Speedy Trial Act.  The intentional five-year delay

constitutes a violation of Ghailani's Speedy Trial Act rights, and the indictment must be

dismissed.  *See* 18 U.S.C. § 3162(a)(2).

---

[11]  *See also United States v. Janik*, 723 F.2d 537, 544-45 (7th Cir. 1983) ("If the judge gives no indication that a continuance was granted upon a balancing of the factors specified by the Speedy Trial Act until asked to dismiss the indictment for violation of the Act, the danger is great that every continuance will be converted retroactively into a continuance creating excludable time, which is clearly not the intent of the Act.").

**D.      The Government's Five-Year Delay Warrants Dismissal Under Federal Rule of Criminal Procedure 48**

The five-year delay between arrest and arraignment also warrants dismissal under Federal Rule of Criminal Procedure 48, which provides: "The court may dismiss an indictment, information, or complaint if unnecessary delay occurs in . . . bringing a defendant to trial." Fed. R. Crim. P. 48(b)(3).  Rule 48 is independent of and broader than the Speedy Trial Act and the constitutional speedy trial right.  *See United States v. Balochi*, 527 F.2d 562, 563-64 (4th Cir. 1976) (Rule 48(b) "supplements the district court's obligation to dismiss indictments in order to protect a defendant's constitutional rights, and it is broader in compass"); *Benatta*, 2003 WL 22202371, at *14 ("Furthermore, even if it were concluded that such delay did not rise to the level of a violation of the Sixth Amendment right to a speedy trial, or to a violation of the [Speedy Trial Act], the Court nevertheless has authority under Rule 48(b) . . . to dismiss the indictment herein."); *United States v. Salzmann*, 417 F. Supp. 1139, 1173 (E.D.N.Y. 1976) (Rule 48 "empowers [a] court to dismiss an indictment under a standard even more exacting than the Sixth Amendment requirement of prosecutorial speed.").

The Advisory Committee Notes to the 2002 Amendments to the Federal Rules of Criminal Procedure make this distinction explicit:

> The Committee considered the relationship between Rule 48(b) and the Speedy Trial Act.  Rule 48(b), of course, operates independently from the Act.  *See, e.g.*, *United States v. Goodson*, 204 F.3d 508 (4th Cir. 2000) (noting purpose of Rule 48(b)); *United States v. Carlone*, 666 F.2d 1112, 1116 (7th Cir. 1981) (suggesting that Rule 48(b) could provide an alternate basis in an extreme case to dismiss an indictment, without reference to Speedy Trial Act); *United States v. Balochi*, 527 F.2d 562, 563-64 (4th Cir. 1976) (per curiam) (Rule 48(b) is broader in compass). In re-promulgating Rule 48(b), the Committee intends no change in the relationship between that rule and the Speedy Trial Act.

Fed. R. Crim. P. 48 Advisory Committee Notes, 2002 Amendments (citations omitted).

15

Dismissal of Ghailani's indictment under Rule 48 is warranted. Courts have examined Rule 48(b) claims under the same four-part framework used to assess Sixth Amendment speedy trial claims. *See, e.g.*, *Salzmann*, 417 F. Supp. at 1173-74. As discussed, *infra* Part II, each of four factors in the constitutional analysis strongly favors dismissal of the indictment under Sixth Amendment standards. Measured against the heightened requirement of prosecutorial speed under Rule 48, dismissal is warranted.

Indeed, courts have routinely dismissed indictments under Rule 48(b) for egregious failures to prosecute. In *United States v. Rowbotham*, 430 F. Supp. 1254 (D. Mass. 1977), the defendant, who was not permitted into the United States due to pending charges in Canada, moved to dismiss an eight-month old indictment under Rule 48(b). 430 F. Supp. at 1256-57. The government attempted to justify the delay by claiming that the defendant was in Canadian custody and that it was United States policy not to seek extradition of those who face criminal charges in other countries. *Id*. at 1257. The court noted that its discretion to dismiss under Rule 48(b) is broader than the Sixth Amendment, *id*. at 1256, and allows dismissal where the Speedy Trial Act does not squarely apply, *id.* at 1257 & n.1. In exercising this discretion, the court rejected the government's argument: "This is a political policy judgment not subject to judicial review or revision. But the consequences of such a political decision are subject to judicial action when they affect directly the orderly administration of the court's business." *Id.* at 1257. The court dismissed the indictment. *Id.* at 1258.

Similarly, in *United States v. Re*, 335 F. Supp. 1176 (S.D.N.Y. 1972), the government sought to justify a six-year delay by claiming it provided the defendant an opportunity to cooperate with unrelated investigations. The court found the length of the delay to be "quite significant," which "g[ave] rise to a presumption of prejudice." *Id*. The court dismissed the

16

government's justification as "unimpressive," since "it is difficult to perceive what relation the investigation of other activities not connected with defendant's case has on the necessity for a prompt trial of his case." *Id.* The court dismissed the indictment. *See also United States v. Zabady*, 546 F. Supp. 35, 36, 39, 40 (M.D. Pa. 1982) (four-month post-indictment delay, plus anticipated one-year delay, warranted dismissal of the indictment with prejudice); *Salzmann*, 417 F. Supp. at 1171-74 (two-and-a-quarter year delay between indictment and commencement of prosecution to violate Rule 48(b)); *United States v. Beckom*, 324 F. Supp. 253, 253-54 (S.D.N.Y. 1971) (dismissing indictment due to six-year pre-indictment and five-and-a-half-year post-indictment delay); *United States v. Blanca Perez*, 310 F. Supp. 550, 551, 554 (S.D.N.Y. 1970) (four-year delay, during which government made a "a conscious . . . decision to postpone th[e] trial in favor of other later indicted defendants," was "conclusively such 'unnecessary delay' as to justify the exercise of the inherent power of a judge of this Court to dismiss a case such as this for want of prosecution").

Here, the government deliberately bypassed the criminal process.[12] The government's

---

[12] There is substantial evidence that the Department of Justice itself was complicit in this government stratagem. *See* Attorney General John Ashcroft on Military Tribunals for Terrorists, Department of Justice Press Conference, Nov. 14, 2001, *available at* http://jurist.law.pitt.edu/terrorism/terrorismmilash.htm ("In the course of the war, we may capture terrorists in places like Afghanistan, who I don't think we should have to bring back to the United States in order to bring them to justice. . . . And foreign terrorists who commit war crimes against the United States, in my judgment, are not entitled to and do not deserve the protections of the American Constitution, particularly when there could be very serious and important reasons related to not bringing them back to the United States for justice."); Michael B. Mukasey, *Civilian Courts Are No Place to Try Terrorists*, Wall Street Journal, Oct. 19, 2009 ("It was anticipated that if those detainees were to be tried at all, it would be before a military commission where the touchstone for admissibility of evidence was simply relevance and apparent reliability."); *In re Guantánamo Bay Detainee Litig.*, Misc. 08-442 (TFH), Tr. at 28 (D.D.C. Dec. 12, 2008) (government counsel: "Guantanamo is first and foremost an intelligence operation, and there are a lot of different agencies of the United States government that have a lot

decision to detain Ghailani for five years outside of the Article III process was not a mere

omission. *Cf. Herring v. United States*, 555 U.S. --, 129 S. Ct. 695, 704 (2009) (exclusionary

rule does not apply where Fourth Amendment violation resulted from negligence rather than

reckless disregard or systemic error of constitutional requirements). Rather, it was intentional

and unjustified. The government's conduct violated the very core of the Criminal Rules and the

Speedy Trial Act. Accordingly, the Court should dismiss the indictment. At a minimum, an

evidentiary hearing is required to evaluate the government's justification for each and every day

of the five-year delay.

### E.    The Indictment Should Be Dismissed With Prejudice

The government's five-year post-indictment delay, during which Ghailani was

intentionally detained and deprived counsel (and may have endured worse yet), flagrantly

violated Federal Rules 5, 9, and 48 and the Speedy Trial Act, necessitating a dismissal of the

indictment with prejudice.

The Speedy Trial Act sets forth several factors to consider in determining whether to

dismiss the indictment with or without prejudice: "the seriousness of the offense; the facts and

circumstances of the case which led to the dismissal; and the impact of a reprosecution on the

administration of this chapter and on the administration of justice." 18 U.S.C. § 3162(a)(2).

Prejudice to the defendant should also be considered. *See United States v. Taylor*, 487 U.S. 326,

334, 108 S. Ct. 2413, 2418 (1988); *United States v. Wilson*, 11 F.3d 346, 352 (2d Cir. 1993).

---

of different interests as a result of that."); Brief for the Respondent at 54, *Rasul v. Bush*, S. Ct.
Nos. 03-334, 03-343 (Mar. 2004), *available at* http://www.jenner.com/files/
tbl_s69NewsDocumentOrder/FileUpload500/170/respondent_brief.pdf ("The intelligence-
gathering operations at Guantanamo are an integral component of the military's efforts to "repel
and defeat the enemy" . . . judicial review of the military's operations at Guantanamo would
directly intrude on those important intelligence-gathering operations"). Such a purpose is
unlawful. *See Hamdi*, 542 U.S. at 521, 124 S. Ct. at 2641 ("Certainly, we agree that indefinite
detention for the purpose of interrogation is not authorized.").

Here, although Ghailani has been accused of involvement in serious crimes, the remaining factors, to the extent they can be gleaned without a factual hearing, overwhelmingly mandate dismissal with prejudice. First there is the sheer length of the delay. *See Taylor*, 487 U.S. at 340; 108 S. Ct. at 2421 (noting that, in considering whether to dismiss an indictment with prejudice under the Speedy Trial Act, "[t]he length of delay [is] a measure of the seriousness of the speedy trial violation" and that "[t]he longer the delay, the greater the presumptive or actual prejudice to the defendant, in terms of his ability to prepare for trial or the restrictions on his liberty").

The circumstances that caused the delay are the result of the government's unprecedented, intentional disregard for Article III process, including circumvention of this Court. Allowing re-prosecution in the face of such fundamental, calculated violations of these rules would significantly undermine their purposes, foster future violations, and raise serious Fifth Amendment concerns.[13] The government chose unilaterally to avoid Article III tribunals for five years and assumed the risk that the Court's doors would now be closed. *See United States v. Giambrone*, 920 F.2d 176, 180 (2d Cir. 1990) ("A pattern of disregard for the responsibility to bring criminal cases to trial expeditiously has the potential for nullifying the requirements of the Act, for if the government suffers only dismissals without prejudice on motion of the defendant, it in effect gains successive 70-day periods in which to bring the defendant to trial."); *United States v. Mora*, No. 04 CR. 00530 (LAP), 2005 WL 1354042, at *6 (S.D.N.Y. June 7, 2005) ("Turning to the effect of a dismissal with or without prejudice on the administration of justice, I note that this factor is closely aligned with the facts that led to

---

[13] *See United States v. Govan*, No. 98 CR. 565 (LAP), 1998 WL 889067, at *5-*6 (S.D.N.Y. Dec. 18, 1998) (evaluating post-dismissal pre-indictment delay under Fifth Amendment due process clause).

dismissal; the more egregious the Government's role in the violation and the more severe the delay, the more dismissal with prejudice is warranted.").

Accordingly, the indictment should be dismissed with prejudice. *See Giambrone*, 920 F.2d at 181-82 (affirming dismissal of indictment with prejudice where defendant was accused of "serious" offenses, the Speedy Trial Act was violated by only 20 days, and the defendants suffered little if any prejudice, primarily because of the government's "extremely lax" speedy trial attitude). At the very least, however, an evidentiary hearing is required to assess the factors relevant to determining whether the indictment should be dismissed with prejudice.

## F.    The Government Cannot Prevail on a Paper Record

The government bears the burden at a hearing of justifying its decision to detain Ghailani without counsel or access to an Article III court. Evidentiary hearings have regularly been deemed necessary to assess the reasons for and effects of such pre-trial delay. *See, e.g.*, *United States v. Ballam*, 70 F.3d 1280, 1995 WL 710498 at *3 (9th Cir. 1995) (remanding the case for "hearing and findings" on Sixth Amendment speedy trial issues); *Cain v. Smith*, 686 F.2d 374, 385 (6th Cir. 1982) (remanding for "an evidentiary hearing [to] more fully develop the record," including to investigate the "reasons for the delay"); *Yong Bing-Gong*, 594 F. Supp. at 250; *Zabady*, 546 F. Supp. at 36; *Rowbotham*, 430 F. Supp. at 1256; *see also United States v. Foxman*, 87 F.3d 1220, 1224 (11th Cir. 1996) (vacating denial of motion to dismiss indictment on Fifth Amendment due process/speedy trial grounds and remanding matter because trial court "made no findings about the reasons for the delay").

An evidentiary hearing would be necessary before the government could ever hope to demonstrate that Ghailani's detention in both undisclosed CIA locations and Guantanamo Bay was a legitimate ground for not arraigning him for five years. Under no circumstances could preventing disclosure of the conditions of Ghailani's detention or indecision by the government

about what to do with grievously abused former CIA detainees constitute legitimate grounds for delay. *See supra*, note 6. The government must also show the absence of prejudice suffered by Ghailani as a consequence of the government's decision to: detain and interrogate him while depriving him of counsel; inflict psychological trauma through "enhanced interrogation techniques" that may have impeded Ghailani's ability to aid his defense, locate witnesses, and recollect important facts; and extract coercively statements that are fundamentally unreliable and further hinder his ability to aid his defense and testify on his own behalf.[14]

## II.    THE GOVERNMENT HAS VIOLATED GHAILANI'S SIXTH AMENDMENT RIGHT TO A SPEEDY TRIAL

### A.    Deliberate, Protracted Denial of Trial Is Fundamentally Incompatible With the Sixth Amendment

The Sixth Amendment guarantees that "[in] all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial." U.S. CONST. amend. VI. Ghailani was unmistakably entitled to a speedy trial, as the right attaches when an individual becomes an "accused" by "a formal indictment . . . or else the actual restraints imposed by arrest and holding to answer a criminal charge." *Marion*, 404 U.S. at 320, 92 S. Ct. at 463 (1971).

This fundamental right works to preserve and promote significant interests of the accused and the public. First, "[i]nordinate delay between arrest, indictment, and trial impair a defendant's ability to present an effective defense." *Id.* at 320, 92 S. Ct. at 463. "Dimming

---

[14] In his brief, Ghailani states that the government hindered his defense by, *inter alia*, "identifying possible defense witnesses well in advance of any lawyer or investigator defending Mr. Ghailani." Def.'s Mem. of Law in Supp. of Mot. to Dismiss at 39. Mr. Ghailani further alleges that previously cooperative witnesses who were spoken to by federal law enforcement officials refused to speak to the defense afterward. *Id.*; *cf. United States v. Ebbers*, 458 F.3d 110, 118 (2d Cir. 2006) (decision to compel government to choose between giving use immunity to defense witnesses or forgoing its own use of immunized testimony requires consideration of, among other things, whether the government "through its own overreaching, has forced the witness to invoke the Fifth Amendment.").

memories and loss of exculpatory evidence," for example, can result in an "inability of a defendant adequately to prepare his case." *Doggett v. United States*, 505 U.S. 647, 654, 112 S. Ct. 2686, 2692 (1992). Indeed, "if a defendant is locked up, he is hindered in his ability to gather evidence, contact witnesses, or otherwise prepare his defense." *Barker v. Wingo*, 407 U.S. 514, 533, 92 S. Ct. 2182, 2193 (1972). "Imposing those consequences on anyone who has not yet been convicted is serious." *Id.* at 532, 92 S. Ct. at 2193. This is certainly true in the ordinary criminal pre-trial detention context; it is especially so where the defendant is also denied counsel, as Ghailani was here.

Second, "unreasonable delay between formal accusation and trial" risks "oppressive pretrial incarceration." *Doggett*, 505 U.S. at 654, 112 S. Ct. at 2692 (citations and quotations omitted). Such concerns are undoubtedly present here, as troubling information regarding the government's brutal interrogation practices has emerged.[15] Delay, whether in detention or out, also fosters undue and prolonged "anxiety and concern of the accused" otherwise minimized through swift adjudication. *Id.*; *see also Dickey v. Florida*, 398 U.S. 30, 42, 90 S. Ct. 1564, 1570 (1970) (Brennan, J., concurring) (observing that the speedy trial right is "intended to spare an accused those penalties and disabilities -- incompatible with the presumption of innocence -- that may spring from delay in the criminal process.").

The Supreme Court has articulated a four-factor test to evaluate whether a defendant's Sixth Amendment speedy trial rights have been violated: (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his or her right to a trial; and (4) the prejudice to the defendant caused by the delay. *Barker*, 407 U.S. at 530, 92 S. Ct. at 2192. The assessment

---

[15] *See* Int'l Committee of the Red Cross, *ICRC Report on the Treatment of Fourteen "High Value Detainees" in CIA Custody*, Feb. 2007, *available at* http://www.nybooks.com/icrc-report.pdf.

considers: "whether [the] delay before trial was uncommonly long, whether the government or the criminal defendant is more to blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result." *Doggett*, 505 U.S. at 651, 92 S. Ct. at 2691 (citing *Barker*, 407 U.S. at 530, 92 S. Ct. at 2192).

These factors comprise a balancing test. *United States v. Carini*, 562 F.2d 144, 148 (2d Cir. 1977) (citing *Barker*, 407 U.S. at 530, 92 S. Ct. at 2192). No one factor is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial[,]" and the factors "must be considered together with such other circumstances as may be relevant." *Barker*, 407 U.S. at 533, 92 S. Ct. at 2193. And because a "fundamental right of the accused" is at stake, the balancing process "must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution." *Id.*

All four factors weigh in Ghailani's favor, meriting dismissal with prejudice of the indictment. *See Strunk v. United States*, 412 U.S. 434, 439-40, 93 S. Ct. 2260, 2263-64 (1973) (holding that dismissal with prejudice is the only remedy for denial of a defendant's Sixth Amendment speedy trial right); *see also United States v. Furey*, 514 F.2d 1098, 1102-03 (2d Cir. 1975) (same). Further, the fourth factor, prejudice, is presumed since the five-year delay from arrest to arraignment is wholly chargeable to the government. *See, e.g., United States v. Ingram*, 446 F.3d 1332, 1340 (11th Cir. 2006) (holding in a case of a two-year post-indictment delay that the defendant "need not demonstrate actual prejudice resulting from the delay" because "[t]he first three *Barker* factors all weigh heavily against the Government.").

### B.  Ghailani Has Suffered an "Extraordinary Delay"

Ghailani has endured what is undeniably an "extraordinary delay" in awaiting trial. Five years have elapsed since he was detained by the government, and he still has not had his day in court. Courts assessing Sixth Amendment speedy trial claims have consistently branded as

"extraordinary," "excessive," "substantial" and "disturbing" multi-year delays between indictment and trial, weighing such delays heavily in the defendant's favor in the *Barker* balancing analysis.  *See, e.g., Doggett*, 505 U.S. at 652, 655, 112 S. Ct. at 2691, 2693 (dismissing with prejudice, after finding an eight-and-one-half year delay between indictment and trial "extraordinary" and "excessive"); *Barker*, 407 U.S. at 533, 534, 92 S. Ct. at 2193-94 (dismissing with prejudice after finding "clear[ly] . . . extraordinary" an over five-year pre-trial delay); *Carini*, 562 F.2d at 148 (dismissing with prejudice after deeming a 34-month pre-trial delay "disturbing"); *United States v. New Buffalo Amusement Corp.*, 600 F.2d 368, 377 (2d Cir. 1979) (dismissing with prejudice after ruling that a pre-trial delay of "four and one-half years is unquestionably substantial"); *United States v. Bergfeld*, 280 F.3d 486, 490 (5th Cir. 2002) (dismissing with prejudice after quoting trial court finding that "[f]ive years well exceeds a length of time that might be held to be presumptively excessive").  Indeed, under the *Barker* analysis, delays of just one year are "presumptively prejudicial."  *Doggett* at 505 U.S. at 652 n.1, 112 S. Ct. at 2690 n.1.

Ghailani has been in exclusive United States government custody for five years, intentionally.[16]  This protracted delay weighs heavily in Ghailani's favor and mandates strict review of the other Sixth Amendment *Barker* factors.

### C.    The Government Cannot Justify the "Extraordinary Delay"

The reasons for the delay weigh heavily in Ghailani's favor as the detention was intentional, not inadvertent, and was calculated to avoid scrutiny by defense counsel and an

---

[16] The circumstances pre-dating Ghailani's detention should also be examined in an evidentiary hearing.  Any delay over that six-year period resulting from lack of government diligence would also count against the government, particularly if the government knew of Ghailani's whereabouts.  *See, e.g., Doggett*, 505 U.S. at 652-53, 112 S. Ct. at 2691; *Ingram*, 446 F.3d at 1337-38; *United States v. Brown*, 169 F.3d 344, 349 (6th Cir. 1999).

Article III court.  In weighing the reason for the delay a court asks "whether the government or the criminal defendant is more to blame for th[e] delay."  *Vermont v. Brillon*, 556 U.S. --, 129 S. Ct. 1283, 1290 (2009) (quoting *Doggett*, 505 U.S. at 651, 112 S. Ct. at 2690 (bracket in original)).  There can be no question that the government is solely to blame here.

Weighed most heavily against the government are deliberate delays designed to secure some "tactical advantage," "harass," or "hamper the defense."  *Barker*, 407 U.S. at 531, 92 S. Ct. at 2192.  Also weighed against the government are relatively neutral reasons, such as delays caused by institutional failures or prosecutorial negligence, not necessarily animated by an intent to delay proceedings.  *See id.*  Delays that are subject to a "valid reason," such as a missing witness, can "justify *appropriate* delay," *id.* (emphasis added), as will delay attributable to the defendant's own actions.  *See Brillon*, 556 U.S. --, 129 S. Ct. at 1291-93.

In all such cases, however, the government bears the burden of proof and is required to prove a legitimate justification for the delay and its duration.  *See Brown,* 169 F.3d at 349 ("[T]he prosecutor and the court have an affirmative constitutional obligation to try the defendant in a timely manner . . . the burden is on the prosecution to explain the cause of the pre-trial delay." (citation and internal quotation marks omitted)); *Smith*, 686 F.2d at 382 ("Unexplained delay is weighed against the prosecution."); *United States v. Hay*, 187 F. Supp. 2d 653, 659 (N.D. Tex. 2002) ("[T]here has been no meaningful explanation by the government for the delay.  Absent such an explanation, the court has no choice but to conclude that either delay was intentional on the part of the prosecution, thus suggesting bad-faith, or it was the result of gross negligence on the part of the prosecutor.  In either event, the length of the delay itself, absent an explanation, would seem to establish a Sixth Amendment violation.").

As detailed below, the government will be unable to prove at a hearing that the five-year delay is anything but one that it has intentionally caused, and that the detention was designed to avoid Article III scrutiny and its attendant rights, such as a speedy trial with defense counsel. The delay should thus weigh firmly against the government and in Ghailani's favor.

1.    The Delay in Bringing Ghailani to Trial Was Deliberate

The delay in Ghailani's case was deliberate.  Deliberate trial delays by the government are directly at odds with the prosecutor's "affirmative constitutional obligation to try the defendant in a timely manner."  *Cain*, 686 F.2d at 382 (citations and internal quotations omitted). Indeed, this constitutional imperative "is not satisfied unless a diligent good-faith effort has been made to try the defendant promptly."  *Id.* (citations and internal quotations omitted).

When the government intentionally delays trial for improper purposes, such as tactical advantage, forum shopping, or simply a desire to detain a defendant, this factor weighs heavily in the defendant's favor. *Arrant v. Wainwright,* 468 F.2d 677, 681 (5th Cir. 1972) (dismissing with prejudice after finding that the prosecutor's desire not to see the defendant acquitted was an invalid purpose for pre-trial delay); *United States v. Lara*, 520 F.2d 460, 464 (D.C. Cir. 1975) (dismissing with prejudice after finding "unnecessary and unconscionable" a delay flowing from attempted prosecutorial forum shopping due to a prosecutorial preference to try the case in Florida instead of the District of Columbia; "[w]e cannot tolerate long and unnecessary delay caused by the deliberate act of the government seeking a supposed advantage"); *United States v. Thomas*, 527 F. Supp. 261, 263 (D.D.C. 1981) (dismissing with prejudice after finding delay resulting from prosecutor's effort to proceed in a federal, instead of a local, forum an "unconstitutional[] abuse[]" of prosecutorial discretion); *see also Cain*, 686 F.2d at 383 ("This court fears the day when any arm of government is allowed to keep an individual under

26

indictment for an extended period merely because it fears that were he brought to trial, he would be found not guilty.").

The government has not lived up to its obligations. It affirmatively determined to delay the court proceedings, remove this Court from the process, and deny Ghailani defense counsel. In rebuking such resort to tactical maneuvers, courts have consistently rejected prosecutorial efforts to gain a strategic advantage unavailable but for intentional delay. *See United States v. Rogers*, 781 F. Supp. 1181, 1187-88 (S.D. Miss. 1991) (dismissing with prejudice after noting that it was impermissible to delay defendant's bribery trial in order to investigate charges of income tax evasion in an attempt to combine the two prosecutions and ease obtaining a conviction); *United States v. Avalos*, 541 F.2d 1100, 1112-13 (5th Cir. 1976) (dismissing with prejudice after finding forum shopping an impermissible tactic); *Arrant*, 468 F.2d at 681 (dismissing with prejudice after finding an extended delay due to a change in witness testimony causing fear of acquittal an impermissible tactic). In this case, by making a deliberate, tactical decision to delay Ghailani's prosecution, the government has deprived him of his speedy trial guarantee.

Furthermore, if the government delayed arraignment to gain evidence or a tactical advantage over others by extracting intelligence, that is impermissible. As one court has observed, "delay [that] was the result of an effort by the government to investigate a separate crime . . . . is not a valid investigative justification for . . . delay." *Rogers*, 781 F. Supp. at 1188; *Re*, 335 F. Supp. at 1177 (dismissing with prejudice after finding that "[t]he reason for the delay advanced by the government, that it provided an opportunity as requested by the defendant to cooperate, is unimpressive as it is difficult to perceive what relation the investigation of other activities not connected with defendant's case has on the necessity for a prompt trial of his

27

case."). Holding Ghailani to gain a tactical advantage in the investigation of others would convert the accused into a captive intelligence asset while charges against him still loomed.[17]

Even if the government made this tactical choice to keep Ghailani detained for intelligence gathering purposes in lieu of pursuing his indictment, it cannot now avoid the consequences of that decision -- particularly since the choice between the two is not binary. The government intentionally kept Ghailani out of the Article III process apparently to avoid any possibility that Ghailani would be released or would gain constitutional protections that it determined would inhibit its intelligence gathering efforts (*e.g.*, counsel). But "[d]elay caused by an intent to persecute, that is, inflict post-conviction punishments on an individual presumed to be innocent[,] is repugnant to the values the speedy trial right is designed to protect." *Cain*, 686 F.2d at 383. Moreover, even if it could suffice, the government would need to prove at a hearing how each part of the five years met that goal, and how resort to an Article III tribunal would have hindered it. *See supra*, Part I.F. Accordingly, such intentional delay counts heavily against the government under the *Barker* analysis.

    2.    <u>Even if the Court Finds the Government's Tactics Not Improper, the Delay Should Still Be Counted Against the Government</u>

Regardless of the conclusions regarding the government's tactics, the protracted delay between arrest and arraignment still weighs against the government. Courts have consistently charged to the government delays caused by official negligence, institutional failings, or similar

---

[17] Congress has proscribed the indefinite detention of witnesses for the purposes of securing their testimony in aid of an investigation. Under 28 U.S.C. § 1826(a), a witness to a court proceeding or grand jury cannot be held in civil contempt for more than 18 months, and such detention is subject to judicial oversight. *Simpkin v. United States*, 715 F.2d 34, 39 (2d Cir. 1983) (remanding to make an "individualized decision" about the continued coercive effect of confinement on the complainant); *see also In re Parrish*, 782 F.2d 325, 328 (2d Cir. 1986) (affirming the district court's determination that continued confinement under 28 U.S.C. § 1826(a) was futile and that the recalcitrant witness should be released).

causes that were within the government's control. These findings are consistent with *Doggett*'s mandate that courts ascertain "whether the government or the criminal defendant is more to blame for th[e] delay." *Doggett*, 505 U.S. at 651, 112 S. Ct. at 2690. Here, whatever its reasons for depriving Ghailani access to an Article III court until mid-2009, the government, and not Ghailani, must shoulder the blame. Numerous decisions have made this clear.

In *Doggett*, an over eight-year delay attributable to prosecutorial negligence weighed heavily against the government. *Doggett,* 505 U.S. at 655, 112 S. Ct. at 2692. No finding of bad faith or sinister government objective was made. Similarly, in *Bergfeld*, the Sixth Circuit found that the defendant's Sixth Amendment right to a speedy trial was violated by a five-year pre-trial delay caused by "the government's interest in hiding the existence of the indictment in hopes the other defendants would be lulled into a false sense of security and reenter the country." *Bergfeld*, 280 F.3d at 489. While the court initially found that this purpose was valid, the government's failure properly to post warrants for Bergfeld's co-defendants, or actively pursue them, and the government's failure to arrest Bergfeld, even though they knew his location, constituted "official negligence" and weighed in favor of dismissal. *Id.* at 489-90.

In *Carini*, the Second Circuit charged to the government various delays for reasons less egregious than here. The Court found that the great bulk of a 34-month delay was attributable to a judge's illnesses, "the court's summer recesses, unexplained inaction of the District Court, caused, no doubt, by an overloaded docket," and the disqualification and death of other judges. *Carini*, 562 F.2d at 149. All of this delay was charged to the government, although none of it was attributed to some improper government intent. *Id.*; *see also New Buffalo Amusement Corp.*, 600 F.2d at 377-80 (finding a four-and-one-half year delay -- attributable to government

inaction, over-crowded dockets, and "the trial court's failure to rule expeditiously on appellants'
motions[]" -- warranted dismissal with prejudice).

In *United States v. Roberts*, 515 F.2d 642, 647 (2d Cir. 1975), the Second Circuit held
that delay following a defendant's "performance of his part of [a plea] agreement" requires a
government justification.  "[I]f the government wishes to bargain for [the condition that faithful
performance of the agreement precede the prosecution's consent to a reduction in charges], it
may but it should do so mindful of the risks which it thereby assumes of dismissed indictments
for unconstitutional delay."  *Id.*; *see also Ingram*, 446 F.3d at 1337 (dismissing with prejudice
because based on a two year delay due to "neutral" reasons, including lack of government
diligence); *cf. Brillon*, -- U.S. --, 129 S. Ct. at 1292 (noting that delay due to "systemic
breakdown in the public defender system" would be attributable to the government) (quotation
marks omitted).

These cases make clear that even if the government is not found to have specifically
intended to create a pre-trial delay, such delays resulting from conditions or events either entirely
within the government's control, or more within the government's control than the defendant's,
are counted against the government.

Any government assertion that delays are justified given the complexity of this case is
fatally undermined by the fact that three of Ghailani's co-conspirators were indicted, arrested,
arraigned, tried, and even sentenced in considerably shorter periods of time than Ghailani has
endured.  Wadih El-Hage, for example, was arrested on September 16, 1998, *United States v. Bin
Laden*, 92 F. Supp. 2d 225, 231 (S.D.N.Y. 2000).  He was sentenced in October 2001, a period of
time slightly greater than three years.  *In re Terrorist Bombings of U.S. Embassies in East Africa*,
552 F.3d 92, 108 (2d Cir. 2008) ("*In re Terrorist Bombings (I)*").  During this time, he had

30

access to counsel and Article III process.  The prosecution of both Mohamed Rashed Dauod

Al-'Owhali and Mohamed Sadeek Odeh also took approximately three years from arrest to

sentencing.  *In re Terrorist Bombings of U.S. Embassies in East Africa*, 552 F.3d 177, 181, 185

(2d Cir. 2008) (noting that Al-'Owhali was arrested on August 12, 1998 and that Odeh was

arrested on August 7, 1998); *In re Terrorist Bombings (I)*, 552 F.3d at 108 (noting that

Al-'Owhali's judgment of conviction was entered on October 23, 2001; Odeh's was entered on

October 24, 2001).  Khalfan Khamis Mohamed was first arrested in October 1999, *United States*

*v. Bin Laden*, 156 F. Supp. 2d 359, 362-63 (S.D.N.Y. 2001), and was sentenced in October

2001.[18]  Thus, nothing about the charges against Ghailani required such a prolonged delay.

3.    National Security Concerns Do Not Justify Denying Ghailani Article III
      Process During Five Years of Detention

The government cannot proffer a blanket, unproven assertion of "national security" as a

justification for all of the five-year delay.  *Cf. Arrant,* 468 F.2d at 680 (dismissing with prejudice

after finding that a change in a witness's testimony justified some, but not all, of an almost two

year delay).  The Supreme Court has written:

> [A]s critical as the Government's interest may be in detaining
> those who actually pose an immediate threat to the national
> security of the United States during ongoing international conflict,
> history and common sense teach us that an unchecked system of
> detention carries the potential to become a means for oppression
> and abuse of others who do not present that sort of threat.

---

[18] Cases such as *United States v. Warsame*, Crim. No. 40-29 (JRT), 2007 WL 748281 (D. Minn. Mar. 8, 2007), thus do not support the delay herein.  In *Warsame*, the Court found that exclusion of time under the Speedy Trial Act, 18 U.S.C. § 3161(h)(8)(A), was justified because of national security concerns including the use of evidence obtained under the Foreign Intelligence Surveillance Act ("FISA") and the implementation of Classified Information Procedures Act ("CIPA") protocols.  2007 WL 745281, at *4.  These justifications, however, refer to delays associated with trying a terrorism defendant within an Article III proceeding and not to delays associated with detaining that defendant prior to the proceeding.  These sorts of complexities were present in Ghailani's co-defendants' cases.  Moreover, such delays in Ghailani's case were easily anticipated by the government and therefore argue for a more prompt arraignment.

*Hamdi*, 542 U.S. at 530, 124 S. Ct. at 2647 (plurality opinion) (internal citations omitted).

The Sixth Amendment provides such a check to a system of detention for an indicted defendant. The government cannot -- without more -- cite the talisman of "national security" as a singular justification for a clear constitutional violation. At the very least, the government should be required to justify at an evidentiary hearing both the reasons for the delay in bringing Ghailani to trial, and importantly, the duration of the delay. *See supra*, Part I.F. Even if the Court were to find that "national security" constitutes a valid justification for some delay, the government must still demonstrate, factually, that its national security interest in detaining Ghailani justified the entire five-year delay. *See Ballam*, 70 F.3d 1280, 1995 WL 710498 at *3; *Cain*, 686 F.2d at 385. In any non-terrorism-related criminal case, intentionally detaining the defendant for five years before submitting to Article III process would result in dismissal. Treating Ghailani's case differently solely on national security grounds undermines both the fundamental constitutional rights enjoyed by all indicted individuals, as well as the general principle that all accused are innocent until proven guilty.

**D.    Ghailani Has Not Waived His Right to a Speedy Trial**

Defendant avers that he vigorously asserted his rights as soon as practicable and as soon as he was given access to counsel and a forum in which to raise his speedy trial concerns. Consequently, this factor should weigh heavily in his favor. *See, e.g., Ingram*, 446 F.3d at 1338 (affirming trial court finding that the defendant "properly asserted his right to a speedy trial") (quotations omitted).[19]

---

[19] Even if there is some doubt concerning Ghailani's timely invocation of his speedy trial right, it is noteworthy that a "rigid application of the demand-waiver rule was rejected by *Barker*." *New Buffalo Amusement Corp.*, 600 F.2d at 378; *Barker*, 407 U.S. at 529-30, 92 S. Ct. at 2191.

**E.    Ghailani Has Been Presumptively Prejudiced By the "Extraordinary Delay"**

The final prong of the *Barker* analysis, whether Ghailani has been prejudiced by the delay, also weighs in his favor.  *Barker*, 407 U.S. at 532, 92 S. Ct. at 2193.  As held in *Doggett*, "excessive delay presumptively compromises the reliability of a trial."  *Doggett*, 505 U.S. at 655, 112 S. Ct. at 2693.  Moreover, that presumption becomes stronger as the delay wears on.  *Id.* at 656, 112 S. Ct. at 2693 ("presumptive prejudice['s] . . . importance increases with the length of delay.").

In *Doggett*, a delay of six years caused by government negligence created a presumption of prejudice that was not "persuasively rebutted" by the government, entitling the defendant to a dismissal of the indictment.  404 U.S. at 658, 112 S. Ct. at 2694.  As the delay here was five years and intentional, prejudice should likewise be presumed.  *See Ingram*, 446 F.3d at 1340 (holding that the defendant "need not demonstrate actual prejudice resulting from [a two-year post-indictment] delay" because "[t]he first three *Barker* factors all weigh heavily against the Government."); *Bergfeld*, 280 F.3d at 491 (dismissing after concluding "that under a correct application of *Doggett*, the five-year delay in the present case caused by the government's negligence entitles Bergfeld to a presumption of prejudice"); *United States v. Shell*, 974 F.2d 1035, 1036 (9th Cir. 1992) (dismissing after finding that "[f]ive years delay attributable to the government's mishandling of Shell's file . . . creates a strong presumption of prejudice").

Indeed, even though Ghailani need not marshal affirmative proof of particularized prejudice, he sets forth in his brief substantial actual prejudice.  The Court in *Barker* identified three types of prejudice that can occur due to pretrial delay:  (1) "oppressive pretrial incarceration;" (2) "anxiety and concern of the accused;" and (3) impairment of the defense. 407 U.S. at 532, 92 S. Ct. at 2193.   Ghailani alleges all three types of prejudice caused by the

33

government's intentional pre-arraignment detention.  Def.'s Mem. of Law in Supp. of Mot. to Dismiss at 52-70.[20]

The prejudice identified by Ghailani in his MDI is corroborated by the prejudice suffered by others detained by the CIA and at Guantanamo Bay.  For example, as set forth in unclassified public court filings, it was in secret CIA detention that CCR's client Majid Khan was subjected to aggressive CIA detention and interrogation program notable for its elaborate planning and ruthless techniques.  The methods inflicted on Khan were deliberately and systematically applied for maximum effect, and Khan admitted anything his interrogators demanded of him, regardless of the truth, in order to end his suffering.  As a direct result of this ordeal, Khan has suffered and continues to suffer severe physical and psychological trauma from which he is unlikely ever to recover fully.[21]  Such trauma and unreliable inculpatory statements clearly impede the ability to aid in one's defense, and testify on one's own behalf.  *Cf. Rock v. Arkansas*, 483 U.S. 44, 51, 107 S. Ct. 2704, 2708-09 (1987) ("The right to testify on one's own behalf at a criminal trial has sources in several provisions of the Constitution.  It is one of the rights that 'are essential to due process of law in a fair adversary process.'" (quoting *Faretta v. California*, 422 U.S. 806, 819 n.15, 95 S. Ct. 2525, 2533 n.15 (1975))).

Finally, the systematic harm present in this case warrants dismissal.  The right to a speedy trial is a societal right as well as an individual one.  *United States v. Gambino*, 59 F.3d 353, 360 (2d Cir. 1995) ("The reason why a defendant cannot waive the time constraints of the

---

[20] Additionally, the defendant's brief contains a declaration from Katherine Stone Newell, an employee in the Office of the Chief Defense Counsel, Office of Military Commissions that describes the difficult circumstances faced by individuals detained in CIA custody.  MDI, Ex. C.
[21] *See* Motion for Preservation of Torture Evidence at 3-4, *Khan v. Gates*, No. 07-1324 (D.C. Cir.) (redacted), *available at*
http://ccrjustice.org/files/Khan_Redacted_Torture_Motion_12_07.pdf.

Speedy Trial Act is that the public has as great an interest in a prompt criminal trial as has the defendant. Certainly, the public is the loser when a criminal trial is not prosecuted expeditiously, as suggested by the aphorism, 'justice delayed is justice denied.'").

> **F.      The Government's Violation of Ghailani's Sixth Amendment Right to a Speedy Trial Necessitates Dismissal of the Indictment With Prejudice**

The indictment must be dismissed with prejudice. *See Strunk*, 412 U.S. at 439-40, 93 S. Ct. at 2263-64. "When a defendant's constitutional right to a speedy trial has been violated, dismissal of the indictment is the only available option even when it allows a defendant who may be guilty of a serious crime to go free." *Brown*, 169 F.3d at 348. Here, as all four *Barker* factors weigh heavily in Ghailani's favor, the only remedy available is a dismissal with prejudice.

## CONCLUSION

For these reasons, the Center for Constitutional Rights supports Ghailani's Motion to Dismiss the Indictment. To the extent the Court determines that the record is insufficiently developed with respect to the government's reasons for delaying Ghailani's trial for five years, or the conditions Ghailani endured during that period, the Center for Constitutional Rights respectfully submits that an evidentiary hearing is warranted, and asks to have access thereto so it can participate in future briefing on these issues.

Dated: December 7, 2009

J. Wells Dixon                                                            Andrew Weissmann
Shayana D. Kadidal                                                 Brian J. Fischer
CENTER FOR CONSTITUTIONAL RIGHTS      Daniel B. Tehrani
666 Broadway                                                          JENNER & BLOCK, LLP
7th Floor                                                                  919 Third Avenue, 37th Floor
New York, NY 10012                                             New York, NY 10022-3908
(212) 614-6464 (Phone)                                         (212) 891-1600 (Phone)
(212) 614-6499 (Fax)                                             (212) 891-1699 (Fax)

*Counsel for Center for Constitutional Rights*          *Counsel for Amicus Curiae*