USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2/24/10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

S10 98 Crim. 1023 (LAK)

AHMED KHALFAN GHAILANI,

Defendant.

**ORDER**

LEWIS A. KAPLAN, *District Judge.*

The Court's Memorandum Opinion, dated January 21, 2010, was filed with the Court Security Officer. The attached copy of that Opinion, redacted by the appropriate authorities in accordance with the Classified Information Procedures Act, now may be filed on the public record. Accordingly, the Clerk shall file the attached copy in place of the half sheet for DI 869.

SO ORDERED.

Dated: February 24, 2010

Lewis A. Kaplan
United States District Judge

UNCLASSIFIED//FOR PUBLIC RELEASE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FILED WITH THE COURT SECURITY OFFICER
[signature] 1/21/10

UNITED STATES OF AMERICA,

-against-

S10 98 Crim. 1023 (LAK)

AHMED KHALFAN GHAILANI,

Defendant.

**MEMORANDUM OPINION**

Appearances:

Michael E. Farbiarz
Nicholas J. Lewin
Assistant United States Attorneys
PREET BHARARA
UNITED STATES ATTORNEY

Peter Enrique Quijano, Esq.
Gregory E. Cooper, Esq.
Michael K. Bachrach, Esq.
*Attorneys for Defendant*

LEWIS A. KAPLAN, *District Judge.*

Ahmed Khalfan Ghailani, an alleged member of Al Qaeda, was indicted in this Court in 1998 and charged with conspiring with Usama Bin Laden and others to kill Americans abroad by, among other means, bombing the United States Embassies in Nairobi, Kenya, and Dar es Salaam, Tanzania. An arrest warrant promptly issued. Some years later, Ghailani was captured abroad and turned over to the Central Intelligence Agency ("CIA"). Rather than execute the arrest warrant issued at the time of the indictment, the executive branch held Ghailani in CIA custody. Much later,

UNCLASSIFIED//FOR PUBLIC RELEASE

he was transferred to secure facilities at the United States naval base at Guantanamo Bay, Cuba, where he remained until he was turned over to civilian authorities in June 2009 and presented pursuant to the warrant. He now stands charged with, among other crimes, conspiring to kill Americans both here and abroad, including by bombing the East African embassies.[1]

On November 16, 2009, Ghailani moved to dismiss the indictment on the ground that the government has deprived him of his Sixth Amendment right to a speedy trial. He now moves, pursuant to Federal Rule of Criminal Procedure 16(a), to compel production by "the government," as that term is used in the rule, of various documents. As initially filed, the instant motion requested production of a variety of documents pertinent either to the pending speedy trial motion or to the charged conduct.[2] The prosecution objected to Ghailani's requests, and the Court heard oral argument on December 9, 2009. The parties joined issue on both the meaning of the term "the government" as it appears in the rule and the "materiality" of the requested documents.

Following oral argument, the parties renewed their efforts to resolve the outstanding discovery requests. By joint letter dated December 23, 2009 (the "Joint Letter"), the parties informed the Court that the overwhelming majority of specific and general discovery requests contained in the

---

1 Some of the facts concerning Ghailani's apprehension and the United States' subsequent custody of him are outlined in *United States v. Ghailani*, __ F. Supp. 2d __, No. S10 98 Crim. 1023 (LAK), 2009 WL 3853799, at *1-2 (S.D.N.Y. Nov. 18, 2009).

2 The discovery requests, which numbered more than 100, sought extensive materials concerning matters such as Ghailani's detention and treatment by the CIA and at Guantanamo, executive branch consideration of how to treat Ghailani and other detainees, including whether they should be prosecuted in military commissions or before Article III courts, and a host of other matters that will occur readily to any informed citizen given the media attention to these and related issues.

defendant's motion had been resolved.[3] Only two remaining requests or groups of requests are ripe for decision:

1. Specific Request/Demand No. 2 (the "Bullet Point Memorandum"): "The Department of Justice 'bullet point' memorandum, dated, [redacted] from the Southern District of New York to Main Justice concerning the detention, interrogation, and/or prosecution of Mr. Ghailani (see Transcript, dated, November 5, 2009, at 44 [filed by Court Reporter under seal])."[4]

2. General Request/Demand Nos. 1-6 ("General Requests 1-6"): "Any and all communications and/or discussions (including, but not limited to, letters, emails, and/or memorandum) between the CIA, the FBI, any other intelligence agency, the Department of Justice (including, but not limited to, the United States Attorneys Office), and the Executive Branch (including, but not limited to, President [Bush and/or Obama, as applicable], Vice-President [Cheney and/or Biden, as applicable], the Attorney General and/or the Secretary of Defense) related to" (1) the decision to transfer the defendant to a CIA black site after his arrest, rather than to the Southern District of New York ("SDNY") for prosecution, (2) the decision to transfer the defendant from a CIA black site to Guantanamo Bay, Cuba, rather than the SDNY for prosecution, (3) the decision to prosecute the defendant in a military commission at Guantanamo Bay, rather than in the SDNY, (4) the decision to prosecute the defendant before an Article I court rather than an Article III court, (5) the decision to prosecute the defendant in the SDNY rather than in a military commission, and (6) the decision to prosecute the defendant before an Article III court rather than an Article I court.[5]

The defense, moreover, has narrowed General Requests 1-6 to those responsive documents that are "in the possession, custody, or control of the Department of Justice and that indicate that the Government's 'reason for delay' of Mr. Ghailani's instant prosecution was a reason <u>other than</u> the

---

[3] The few requested items relevant to issues other than the pending speedy trial motion are the subject of ongoing negotiations between the parties. They have agreed not to press for adjudication of those matters at present. *See* Joint Letter, at 1.

[4] Def. Br. at 32.

[5] *Id.* at 29-31.

interests of national security as described more fully in the Government's Response to Defendant's Speedy Trial motion."[6]

*Discussion*

Discovery from the government in federal criminal cases was largely unavailable until the adoption of the 1966 amendment to Rule 16 of the Rules of Criminal Procedure.[7] Since then, its availability gradually has broadened. Insofar as it is important to this motion, the current version of the rule provides:

> "(E) **Documents and Objects.** Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs . . . or portions of any of these items, if the item is within the government's possession, custody or control and:
>
> "(i) the item is material to preparing the defense."[8]

Thus, in order to determine Ghailani's right to disclosure of particular materials, it is necessary to decide whether those items are "material to preparing the defense" and, if so, whether they are within the possession, custody, or control of "the government" as that term is used in the rule.[9] In addition,

---

6 Joint Letter, at 2 (emphasis in original).

7 CHARLES ALAN WRIGHT, 2 FEDERAL PRACTICE AND PROCEDURE: CRIMINAL § 251 (3d ed. 2000).

8 FED. R. CRIM. P. 16(a)(1)(E). Rule 16(a)(1)(E), previously Rule 16(a)(1)(c), was re-lettered for stylistic purposes in 2002. *See* FED. R. CRIM. P. 16 advisory committee note (2002).

9 As an initial matter, one might argue that *United States v. Armstrong*, 517 U.S. 463 (1996), makes Rule 16(a)(1)(E) completely unavailable to compel production of evidence pertinent to an affirmative defense unrelated to the merits of the prosecution's case-in-chief (e.g., the

note must be taken that Rule 16(a)(2) exempts from the government's rule-based discovery obligations certain work product or work product-like information:

> "Except as rule 16(a)(1) provides otherwise, this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case."[10]

The parties disagree over both the materiality of the two disputed discovery requests and the proper scope of "the government" for purposes of Rule 16. Neither has addressed the question whether any responsive documents nonetheless would be protected from disclosure by Rule 16(a)(2).

*The Bullet Point Memorandum*

At a pretrial conference, the government described the Bullet Point Memorandum as being "something of an order of proof with respect to Ghailani" sent from the United States Attorney's Office for the Southern District of New York (the "USAO") to the Department of Justice

---

speedy trial motion at issue here). The Supreme Court there seemed so to indicate in ruling that the defendant was not entitled to discovery under Rule 16(a)(1)(C), the predecessor to Rule 16(a)(1)(E), in support of a selective prosecution claim because "in the context of Rule 16 'the defendant's defense' means the defendant's response to the Government's case in chief." *Id.* at 463. Nonetheless, this statement was dictum because the Court's necessary finding was only with respect to Rule 16's application to the selective prosecution claim. Moreover, the Court subsequently resolved the matter on the assumption that the requested discovery would have been available if the defendant could have made the necessary threshold showing regarding the claimed selective prosecution. *Id.*

Neither the government nor the defense has addressed *Armstrong*, and this Court assumes that *Armstrong* does not preclude Rule 16(a)(1)(E) discovery in support of the defendant's speedy trial motion.

10 FED. R. CRIM. P. 16(a)(2).

("DoJ") in Washington on [redacted][11]

This memorandum is a "report, memorand[um], or other internal government document[]" made by prosecutors for the government in connection with prosecution of this case within the meaning of Fed. R. Crim. P. 16(a)(2).[12] It therefore is protected against disclosure regardless of its materiality. Defendant's request for it must be denied.

*General Requests 1-6*

*Materiality*

In *Barker v. Wingo*,[13] the Supreme Court adopted a four-prong balancing test for determining whether a defendant's Sixth Amendment right to a speedy trial has been violated. Courts must consider (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of the speedy trial right, and (4) the prejudice suffered by the defendant.[14] In opposing the defendant's speedy trial motion, the government argues that national security justified delaying Ghailani's federal prosecution and that the second *Barker* factor therefore favors the prosecution.[15]

---

11 Tr. Nov. 5, 2009, at 44.

12 *See Armstrong*, 517 U.S. at 462-63 ("[U]nder Rule 16(a)(2), [a defendant] may not examine Government work product in connection with his case."); *United States v. Koskerides*, 877 F.2d 1129, 1133-34 (2d Cir. 1989) (finding Rule 16(a)(2) excluded IRS agent's tax report from government's disclosure obligations).

13 407 U.S. 514 (1972).

14 *Id.* at 530.

15 Gov't Br. in Opp'n to Def.'s Speedy Trial Mot. 38-67.

In light of the government's stated position on this issue, any communications among pertinent government agencies and officials tending to indicate that the "reason for delay" in prosecuting Ghailani on this indictment was other than the interests of national security described in the government's response would be material to the defense because they would undermine the government's speedy trial motion position as to the reason for delaying this prosecution. The Court therefore holds that General Requests 1-6, as narrowed by the Joint Letter, are "material to the defense" within the meaning of Rule 16(a)(1)(E). The question remains, however, as to whether these documents are within the possession, custody, or control of "the government."

*Possession, Custody, or Control*

The scope of the prosecutor's disclosure obligations under Rule 16 turns on the proper construction of the phrase "the government" as that term is used in Rule 16(a)(1)(E). Of course, we all use the phrase "the government" to refer broadly to the institutions by which we order our civic affairs. But the term has a more specialized and, regrettably, not fully articulated meaning in the context of Rule 16. On the one hand, it most definitely does not encompass the entirety of the federal government.[16] On the other, it surely includes at least the prosecutors working on the case.

---

16 *See, e.g.*, *United States v. Upton*, 856 F. Supp. 727, 749-50 (E.D.N.Y. 1994) (assuming "the government" for Rule 16 purposes does not extend to the entire federal government); *cf. United States v. Quinn*, 445 F.2d 940, 944 (2d Cir. 1971) ("[A]ppellants take the completely untenable position [in the *Brady* context] that 'knowledge of any part of the government is equivalent to knowledge on the part of this prosecutor' . . . . The Department of Justice has thousands of employees in the fifty States of the Union. Add to these many more thousands of employees of 'any part of the government.' Appellants' argument can be disposed of on a 'reductio ad absurdum' basis.").

Where between these extremes the dividing line falls, however, is somewhat uncertain.[17]

The parties agreed at oral argument that the term "the government" for this purpose includes, *inter alia*, the prosecutors working on Ghailani's prosecution, the Criminal Division of the USAO and any USAO Civil Division personnel who are or were working with the Criminal Division on this case, the Assistant United States Attorneys on the prior Embassy bombing trial, FBI or other law enforcement agents now or previously assigned to the prosecution team, and members of "Main Justice"[18] who have been involved with this prosecution.[19] They disagree, however, as to whether the phrase includes also those parts of the FBI and Main Justice that have not been "intimately involved" with federal prosecution of the charged conduct.[20] The fundamental question, then, is whether the phrase "the government" as used in that rule extends beyond the USAO and the trial team up into Main Justice and the FBI and, if so, how far. Two sources of learning illuminate this question, although neither controls the outcome.

First, some cases have construed the term "the government" in Rule 16. But they provide relatively little guidance on these facts. Most have involved the question whether the term "the government" extends laterally to include other government agencies rather than vertically within

---

17 *See, e.g.*, *United States v. Chalmers*, 410 F. Supp. 2d 278, 288 (S.D.N.Y. 2006) ("The prosecution concedes that the Second Circuit has not defined 'the government' for Rule 16 purposes.").

18 The parties have not defined "Main Justice," either in their briefs or at oral argument. The Court construes this term as referring to the Department of Justice headquarters in Washington, D.C.

19 *See* Public Session Tr., Dec. 9, 2009, at 11-12.

20 *See* Closed Session Tr., Dec. 9, 2009, at 19-25.

the DoJ.[21] They therefore are of little help here.

The government relies heavily on a second group of cases that is relevant at least by analogy – cases construing the constitutional obligation of the prosecution to disclose exculpatory information to a criminal defendant under *Brady v. Maryland*.[22] In that context, courts often have been called upon to consider whether the obligation of prosecutors – colloquially, the obligation of "the government" – extends to information known to public officers and officials who are not intimately involved in the prosecution of the defendant. Broadly speaking, courts have held that prosecutors are under a duty to disclose not only exculpatory evidence known to the prosecutors, but also to "others acting on the government's behalf in the case, including the police."[23] At the same time, however, "knowledge on the part of persons employed by a different office of the government does not in all instances warrant the imputation of knowledge to the prosecutor, for the imposition

---

21

*See, e.g.*, *United States v. Finnerty*, 411 F. Supp. 2d 428, 432 (S.D.N.Y. 2006) (defining the government as encompassing "government agenc[ies] so closely aligned with the prosecution [] as to be considered part of the prosecution team"); *Chalmers*, 410 F. Supp. 2d at 290 (almost identical language); *United States v. Volpe*, 42 F. Supp. 2d 204, 221 (E.D.N.Y. 1999) ("Courts have construed the term 'government' in this rule narrowly to mean the prosecutors in the particular case or the governmental agencies jointly involved in the prosecution of the defendant . . . ."); *Upton*, 856 F. Supp. at 749 ("The key to the analysis, therefore, is the level of involvement between the United States Attorney's Office and the other agencies . . . . [T]he inquiry is the extent to which there was a 'joint investigation' with another agency.").

22

373 U.S. 83 (1963).

23

*Kyles v. Whitley*, 514 U.S. 419, 437 (1995).

This rule draws on the "arm of the prosecutor" doctrine. *See United States v. Morell*, 524 F.2d 550, 555 (2d Cir. 1975) (finding a BNDD agent who participating actively in the prosecution and who was at counsel table for most of the trial to be an "arm of the prosecution" for *Brady* purposes).

of an unlimited duty on a prosecutor to inquire of other offices not working with the prosecutor's office on the case in question would inappropriately require us to adopt 'a monolithic view of government' that would 'condemn the prosecution of criminal cases to a state of paralysis.'"[24] The government therefore would have the Court conclude that the term "the government" as used in Rule 16 means only "others acting on the government's behalf in the case," a construction that, they contend, would exclude the vast majority of individuals in Main Justice and the FBI.

The government's argument is not quite as compelling as it first appears. While some courts on occasion have said or assumed, albeit usually without analysis, that the meaning of "the government" is coextensive in the *Brady* and Rule 16 contexts, Rule 16 and *Brady* in fact serve different purposes, and it is far from clear that their definitions of "the government" are or should be identical.[25] Indeed, the Advisory Committee Notes to the 1974 amendments to Rule 16 specifically state that the Committee "decided not to codify the Brady Rule,"[26] indicating that the

---

24

*United States v. Avellino,* 136 F.3d 249, 255 (2d Cir. 1998) (citation omitted); *see also United States v. Quinn,* 445 F.2d 940, 944 (2d Cir. 1971) ("The Department of Justice has thousands of employees in the fifty States of the Union. Add to these many more thousands of employees of 'any part of the government.' Appellants' argument [for broadly expansive *Brady* disclosure obligations] can be disposed of on a 'reductio ad absurdum' basis.").

25

Whereas *Brady* is grounded in due process rights and seeks to ensure fair trials by preventing the suppression of exculpatory evidence, Rule 16 is a general criminal discovery mandate approved by Congress in the interests of promoting broader pre-trial discovery for both defendants and the government. *See United States v. Conder,* 423 F.2d 904, 911 (6th Cir. 1970) (concluding that "the disclosure required by Rule 16 is much broader than that required by the due process standards of *Brady*); Peter J. Henning, *Defense Discovery in White Collar Criminal Prosecutions,* 15 GA. ST. U. L. REV. 601, 616-18 (1999) (arguing that Rule 16, unlike *Brady,* provides a broad mandate for discovery and that its definition of "government" should be correspondingly broader than in *Brady* analysis).

26

FED. R. CRIM. P. 16 advisory committee note (1974).

scopes of these disclosure requirements are not coextensive and that the phrase should not necessarily be read as identical in both situations. But it ultimately is unnecessary, in the unique circumstances of this case, to determine whether Rule 16 and *Brady* are coextensive in this respect.

Ghailani is charged with complicity in acts of terrorism aimed at two United States embassies. That crime commanded the attention of the highest levels of our government long before Ghailani was in American custody. His fate since he came into U.S. custody doubtless has continued to command such attention to this day as evidenced by his selection as the first Guantanamo detainee to be brought to the United States to face criminal charges. To suggest in this context that a construction of the term "the government" as used in Rule 16 that reaches beyond the line prosecutors and investigators charged with the prosecution into Main Justice -- the cabinet department responsible for the prosecution – would 'condemn the prosecution of criminal cases to a state of paralysis'" would be insupportable. Thus, what is called for here is a practical interpretation of Rule 16 that would serve its goal of fairness to a criminal defendant by requiring the disclosure of documents material to the defense while at the same time avoiding an overly expansive construction that would thwart or unduly hamper this prosecution or prosecutions in general by imposing unreasonable disclosure obligations.

In this case, the Joint Letter limits General Requests 1-6 to documents within the possession, custody, or control of the DoJ. The defendant has a substantial interest in obtaining any such responsive documents that may exist because they likely would provide significant new information as to why a series of decisions of great importance were taken with respect to this defendant. The reasons for those decisions bear directly on the speedy trial motion.

In all the circumstances, I conclude that responsible officials within the DoJ who were involved in making the series of decisions described in General Requests 1-6 were sufficiently involved with the prosecution properly to be considered "the government" for Rule 16 purposes. Even if those officials had no other involvement with Ghailani's investigation or prosecution, the decisions at issue were so important to the timing and progress of this case that participation in the decisionmaking renders those individuals members of the prosecution team, at least to the extent of that participation. Accordingly, the Court holds that, for purposes of this Rule 16 motion, the term "the government" includes individuals at DoJ who participated in advising on or making the decisions regarding Ghailani's prosecution enumerated in General Requests 1-6. Rule 16(a)(1)(E) requires that the government disclose these documents to the defense to the extent that they are within the possession, custody, or control of "the government" as here defined and not otherwise protected from disclosure.[27]

27 There is some question as to whether Rule 16(a)(2) precludes the disclosure of any responsive documents that may exist. To whatever extent the prosecution claims that responsive documents otherwise required to be produced by this decision are protected from disclosure by Rule 16(a)(2), it shall serve and file a log enumerating these documents and providing the information that would be required by S.D.N.Y. Local Civ. R. 26.2 in respect of documents withheld on grounds of privilege.

*Conclusion*

Defendant's motion to compel is granted to the extent set forth herein and denied in all other respects. As it is not possible on this record to define precisely which DoJ officials come within this ruling, the government shall settle an order implementing this ruling on four days' notice.

SO ORDERED.

Dated: January 21, 2010

Lewis A. Kaplan
United States District Judge