UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------x
UNITED STATES OF AMERICA,

       -against-                               S10 98 Crim. 1023 (LAK)

AHMED KHALFAN GHAILANI,

                Defendant.
------------------------------------------x

## MEMORANDUM OPINION

Appearances:

                Michael Farbiarz
                Harry A. Chernoff
                Nicholas Lewin
                Sean S. Buckley
                PREET BHARARA
                UNITED STATES ATTORNEY

                Peter Enrique Quijano
                Michael K. Bachrach
                Steve Zissou
                *Attorneys for Defendant*

LEWIS A. KAPLAN, *District Judge.*

       Ahmed Khalfan Ghailani, an alleged member of Al Qaeda, was indicted in this Court in 1998 and charged with conspiring with Usama Bin Laden and others to kill Americans abroad by, among other means, bombing the United States Embassies in Nairobi, Kenya, and Dar es Salaam, Tanzania. The matter is before the Court on Ghailani's motion to compel production of three

documents that the government contends are privileged against disclosure. The defendant does not dispute that the requirements of the privileges asserted by the government are satisfied as to each of the documents. Rather, he claims that the government has waived privilege by placing the substance of the documents at issue or, alternatively, that the public interest in the documents overcomes the privileges in question.

*Facts*

*The Charges*

Ghailani first was indicted by a grand jury in this Court on December 16, 1998. The indictment charged the existence of a broad ranging conspiracy by Usama Bin Laden and others, including Ghailani, to wage a campaign of terror against the United States.[1] Among the alleged means and methods of the conspiracy were (a) killing Americans abroad and (b) the bombing of the United States Embassies in Nairobi and Dar es Salaam.[2] Ghailani was charged with participation in the conspiracy and with substantive offenses.[3] This Court issued a warrant for Ghailani's arrest on the day he first was charged.[4] The warrant was not promptly executed, presumably because he could not be found.

---

[1] Third superseding indictment [DI 31] ¶¶ 1-9.

[2] *Id.* ¶ 9.

[3] That indictment has been superseded many times.

[4] Docket entry following DI 31.

*Ghailani's Apprehension, Production for Trial, and Speedy Trial Motion*

On July 24, 2004, Ghailani was taken into custody by a foreign nation. He was transferred to exclusive United States control and then held and interrogated outside of the United States by the CIA as part of a secret intelligence-gathering program.[5] In September 2006, President Bush ordered that Ghailani and several other "high value detainees" be transferred to the U.S. naval base at Guantanamo Bay,[6] where he was held in military custody for approximately 32 months before ultimately being produced in this Court pursuant to the outstanding arrest warrant.

On November 16, 2009, defendant moved to dismiss the indictment on the ground that the government deprived him of his Sixth Amendment right to a speedy trial.[7] The government responded that "two reasons justified the delay [between the defendant's capture and his arraignment]: the protection of national security and the pendency of other proceedings,"[8]

---

[5] Def. Mem. in Support of Def's Mot. to Dismiss Indictment Due to Denial of Constitutional Right to Speedy Trial, Ex. B ¶ 6 (describing public knowledge of covert CIA detention and interrogation program).

[6] *Id.* ¶ 7.

[7] That motion remains pending.

[8] DI 848, DI 850, at 29.

The government's memorandum in opposition to the motion, like other classified filings in this case, initially was filed with the Court Security Officer in accordance with the Classified Information Procedures Act, 18 U.S.C. App. 3 ("CIPA"), and the Security Procedures established pursuant to Section 9 of that Act by the Chief Justice of the Supreme Court. When such filings are made, a so-called "half sheet" – a copy of the cover of the document – is recorded on the public docket and made publicly available over the CM/ECF system. Following deletion of classified material, a redacted version of such a filing then is made publicly available over the CM/ECF system.

In this instance, DI 848 is the half sheet for the government's memorandum. DI 850 is the redacted version.

4

specifically Combatant Status Review Tribunal ("CSRT") proceedings and an ultimately abandoned prosecution before a military commission.[9]

*The Discovery Dispute*

On November 23, 2009, Ghailani moved to compel the production of certain documents that he contended were material to the speedy trial motion. The Court ultimately granted the motion insofar as it pertained to "any communications among pertinent government agencies and officials tending to indicate that the 'reason for delay' in prosecuting Ghailani on this indictment was other than the interests of national security"[10] that were within the possession, custody, or control of "individuals at DoJ who participated in advising on or making the decisions regarding Ghailani's prosecution."[11] In due course, the government asserted privilege as to 18 documents that it regarded as "marginally responsive . . . , if they are responsive at all." The Court then reviewed those documents *in camera* at the parties' joint request and determined that three of them – documents 6, 8 and 12 – are "potentially responsive."[12] Ghailani thereupon objected to the government's privilege

---

[9] *Id.* at 29-30, 60-62, 67-75.

[10] *United States v. Ghailani,* No. S10 98 Crim. 1023 (LAK), ___ F. Supp. 2d ___, 2010 WL 653269, at *3.

[11] *Id.* at *4.

[12] *See* DI 897. The descriptions of these documents contained in the government's privilege log are classified. Insofar as the defendant does not dispute that the requirements of at least the attorney-client privilege are satisfied with respect to each of these three documents, further description of their contents is unnecessary.

claims as to these three documents on the grounds mentioned above.[13]

*Discussion*

Ghailani's claim that the government has waived the claimed privileges rests on his pending motion to dismiss the indictment for violation of his Sixth Amendment right to a speedy trial. The connection is this.

The parties agree that the constitutionality of the delay in bringing Ghailani to trial on this indictment depends upon a weighing of several factors enumerated by the Supreme Court in *Barker v. Wingo*,[14] the salient factor for present purposes being "the reason for the delay."[15] The government has given as reasons for the delay the protection of national security and the previous CSRT and military commission proceedings. The Court already has ruled that certain documents evidencing "communications . . . tending to indicate that the 'reason for delay' in prosecuting Ghailani on this indictment was other than the interests of national security" – in other words, communications tending to undercut the government's stated justification for the delay – are material to the defense and, unless privileged, producible. It has determined also, by an *in camera* review, that these three documents are "potentially responsive" to that order. On the basis of the foregoing, Ghailani argues that the government has put the protected information at issue and thus waived the claimed privileges.

---

[13] DI 905.

[14] 407 U.S. 514 (1971).

[15] *Id.* at 530.

In evaluating this contention, it is useful to begin with the basics. The attorney-cleint privilege,[16] broadly speaking, protects confidential communications between attorney and client for the purpose of obtaining or rendering legal advice. Thus, it does not protect underlying facts, only confidential communications between attorney and client about those facts. To illustrate that point, there is no privilege preventing a litigant in a motor vehicle accident case from compelling his or her adversary to testify as to whether a traffic light was red when the adversary went through an intersection. But the attorney-client privilege prevents a litigant from asking his or her adversary or the adversary's lawyer from inquiring as to what the adversary confided to his or her lawyer on the subject of the color of the light. That is a protected attorney-client communication.

The fundamental proposition governing implied or "at issue" waivers of attorney-client and other evidentiary privileges is that a party may not affirmatively rely on privileged communications to support a claim or defense and then shield those communications from discovery by its adversary.[17] For example, if a defendant in a securities fraud case testifies that he or she believed that he or she was acting in conformity with SEC rules based on the advice of a lawyer, the defendant cannot invoke attorney-client privilege to avoid disclosure of the lawyer's advice. In other words, the privilege is waived where a party affirmatively puts its attorney's advice (or other privileged communication) at issue.[18] But the critical point is that a party claiming an implied or at

---

[16] The Court recognizes that the government relies also on work product protection and the deliberative process privilege. As the government prevails here if it prevails on any of the three claimed privileges, and as the Court concludes below that it does prevail on the attorney-client privilege claim, there is no need to discuss the other claimed privileges.

[17] *E.g., In re Grand Jury Proceedings,* 219 F.3d 175, 182 (2d Cir. 2000).

[18] *E.g., In re Grand Jury Proceedings,* 350 F.3d 299, 302 (2d Cir. 2003).

Case 1:98-cr-01023-LAK   Document 919   Filed 04/23/10   Page 7 of 8

7

issue waiver must make "some showing . . . that the opposing party *relies* on the privileged communication as a claim or defense or as an element of a claim or defense."[19]

In this case, the government's contention that its delay in proceeding against Ghailani on this indictment was justified rests on declarations of (1) a high ranking official in the national intelligence community with respect to the intelligence purpose and value of Ghailani's detention and interrogation by the CIA,[20] and (2) the lead prosecutor in the military commission prosecution of Ghailani during 2007-09.[21] Neither of these witnesses has contended that he or she relied upon any of the three documents in question. There is no evidence that either ever saw or learned of their existence or contents. And, perhaps most importantly, the government does not here assert that the delay was justified in consequence of advice given in any of the three documents in question. In other words, it has not put the contents of these documents in issue. Accordingly, Ghailani's argument fails because he has not established that the government is relying on any of these documents "as a claim or defense or as an element of a claim or defense."[22]

It is no answer to argue, as Ghailani does, that there has been an implicit waiver because the reasons for delay must be considered in deciding a Sixth Amendment speedy trial challenge, just as the color of the traffic light would have to be considered in the motor vehicle example given above. But the fact that the color of the traffic light would be relevant in the motor

---

[19] *In re County of Erie,* 546 F.3d 222, 228 (2d Cir. 2008) (emphasis in original).

[20] DI 918. This declaration is classified.

[21] DI 915.

[22] *County of Erie,* 546 F.3d at 228.

vehicle example would not justify disclosure of what a motorist told his or her lawyer on that subject. So too here. The fact that the reasons for delay in this case are pertinent does not justify disclosure of privileged communications arguably pertinent to that subject because there has been no reliance by the government on those communications.

I have considered defendant's other arguments and concluded that they lack merit.

*Conclusion*

For the foregoing reasons, defendant's objections to the government's claim of attorney-client privilege with respect to Documents 6, 8 and 12 are overruled. The Clerk shall terminate DI 829.

SO ORDERED.

Dated:   April 23, 2010

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)