UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FILED UNDER SEAL
AND WITH THE COURT
SECURITY OFFICER
Macisso May 4, 2010

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,

-against-

S10 98 Crim. 1023 (LAK)

AHMED KHALFAN GHAILANI,

Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED #: 5/5/10

**MEMORANDUM AND ORDER**

LEWIS A. KAPLAN, *District Judge.*

On April 2, 2010, defendant moved for "[a]n order directing the Bureau of Prisons to cease and desist from employing body cavity searches against" him "as a prerequisite to his attendance at court appearances" (the "BoP Motion"). The motion was supported principally by a declaration of a psychologist employed by the defense, Katherine A. Porterfield, Ph.D., who asserted that the defendant suffers from post-traumatic stress disorder as a result of his treatment while in CIA custody and that the defendant would be "at risk to be unable to function in a courtroom and in relation to his legal defense" if what the defense calls "body cavity searches" are continued.

The motion was argued on April 26, 2010. At the conclusion of the argument, the Court scheduled an evidentiary hearing on the BoP Motion for May 6, 2010. The defense then sought an adjournment on the basis of Dr. Porterfield's unavailability on that date. On May 3, 2010, the Court granted the defendant's motion to the extent of accommodating Dr. Porterfield's schedule by agreeing to hear her testimony on May 18. It nevertheless directed that the defendant be produced on May 6, 2010.

This prompted a somewhat confused letter, dated May 3, 2010, from defendant's counsel. The letter purports to address "certain procedures relevant to Mr. Ghailani's *competency hearing* presently scheduled for Thursday, May 6, 2010."[1] It indicates an intention to file a Notice of Appeal from the May 3 order, which subsequently has been filed, and to file an emergency motion in the Second Circuit seeking a stay of the supposed competency hearing. In addition, it applies to this Court for an order (1) appointing a mental health professional to conduct an independent examination of the defendant, (2) providing that Dr. Porterfield testify first, the new mental health professional next, and the defendant third at what the letters calls the competency hearing, and, if that is not done, (3) staying the May 3 order for sufficient time to permit the defendant to make an emergency motion in the Court of Appeals. As will appear, the defendant is proceeding under misapprehensions of fact and law.

I

*A. The November Incident and the Appointment of Dr. Porterfield*

The indispensable background here is that the Court received a letter from defense counsel, dated November 13, 2009, which requested that the Court appoint Dr. Porterfield, under the Criminal Justice Act, to assist the defense as a mental health expert. The basis for that application was an incident that allegedly occurred prior to a meeting between the defendant and the government that had been scheduled to take place the previous week. On the date of the intended meeting, the staff at the Metropolitan Correctional Center (the "MCC"), pursuant to its standard

---

1 Emphasis in original.

procedures, required the defendant to submit to a "visual search" – a strip search that, on that occasion, included a visual inspection of his rectal area – in order to attend the meeting. The defendant allegedly reacted negatively to this, and the meeting never took place. According to the November letter, the defendant at that time "state[d], unequivocally, that he [would] no longer voluntarily appear in court for his court appearances, absent assurance that he [would] not be humiliated in this manner again." The Court appointed Dr. Porterfield as requested.

Ghailani has not appeared in court since the alleged incident, and defense counsel have waived his presence on each occasion.[2] The Court up to now has been satisfied that defendant's right to be present, if any, has been fully protected.

It should be added also that defense counsel repeatedly have represented to the Court that, in their view, there is no basis for questioning the defendant's competency to stand trial – most recently on April 19, 2010.[3]

## *B. The BoP Motion*

As noted, the defense filed the BoP Motion on April 2, 2010, supported primarily by a declaration from Dr. Porterfield. She there stated her view that the defendant suffers from post-traumatic stress disorder and that "nudity serves as a profound 'trigger' for Mr. Ghailani, thrusting him into vivid memories of the interrogation process he endured, as well as a real fear that further

---

2 It is unnecessary for present purposes to decide whether defendant has had a right, either under the Constitution or FED. R. CRIM. P 43, to be present at any proceedings in this case.

3 Tr., Apr. 19, 2010, at 13 ("[I]t is our present position that as of this moment he is competent to assist in his own defense.").

maltreatment will occur in the present setting."[4] She went on to recommend that "the MCC's strip search procedure . . . be limited so as to not include the intrusive body cavity search" – actually, the visual, non-intrusive inspection of defendant's rectum – because "[w]ith the body cavity search in place, Mr. Ghailani is at risk to be unable to function in a courtroom and in relation to his legal defense."[5]

The BoP Motion was argued on April 26, 2010. During the course of that argument, the Court raised an issue as to the persuasiveness of Dr. Porterfield's declaration – based as it is on the premise that nudity triggers an adverse reaction – in light of the seeming inconsistency between her conclusions that (1) requiring the defendant to submit to visual inspection of his body cavities before or after attending court might render him unable to participate in his defense, and (2) subjecting him to visual strip searches that did not examine his body cavities would not have such an effect.[6] In view of this apparent inconsistency, the Court determined that it would hold a hearing on the BoP Motion on May 6, 2010.[7]

The Court further indicated that Ghailani was to be present at that hearing because it wanted to hear from him both on this issue and regarding waiver of his right to be present at court appearances.[8] With respect to the former concern, the Court noted that it would not direct the

---

4 Porterfield Decl. ¶ 23.

5 *Id.* ¶ 25.

6 *See* Tr. Apr. 26, 2010, at 12.

7 *Id.* at 24.

8 *Id.* at 25-26.

defendant to take the stand with respect to the BoP Motion, but that if he chose not to do so the Court would be free to draw conclusions from that decision.[9] With respect to the latter, it questioned whether it could or should accept a waiver of defendant's right to be present at trial (or any other proceeding at which he has a right to be present) absent a knowing and informed waiver on the record in open court.[10] The Court stated also that it expected to hear from Dr. Porterfield at the hearing and that she was likely to be asked for her opinion as to whether the defendant is currently competent to stand trial.[11]

II

As this complicated history indicates, what is to begin on May 6, 2010 is a hearing on the BoP Motion, *not* a competency hearing. Indeed, the Court has made no determination as to whether a competency hearing is necessary or appropriate, particularly in light of defense counsel's repeated representations as to their belief that the defendant is competent to stand trial. While the

---

9 *Id.* at 26.

10 *Id.* at 25-26. Rule 43 provides in pertinent part that "[t]he defendant must be present at . . . (2) every trial stage" but that "[a] defendant who was initially present at trial" may waive that right. FED. R. CRIM. P. 43(a)(2), (c)(1).

Any waiver of a defendant's right to be present "is only valid if it is found to be 'knowing and voluntary.'" *Polizzi v. United States*, 926 F.2d 1311, 1319 (2d Cir. 1991); *see also United States v. Fontanez*, 878 F.2d 33, 36 (2d Cir. 1989). Moreover, Second Circuit cases have suggested that a defendant in custody may not be in a position voluntarily to waive his or her right to be present at trial. *See Fontanez*, 878 F.2d at 36-37; *United States v. Crutcher*, 405 F.2d 239, 243 (2d Cir. 1968). In light of this case law and the existing record, the Court finds it necessary and, in any case, prudent to hear directly from the defendant on this matter.

11 *Id.*

Court may well inquire of Dr. Porterfield as to whether she has a view on that subject and, if so, its substance, the purpose of any such inquiry would be limited. It would serve only to assist the Court in deciding whether "there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect *rendering him mentally incompetent to the extent that he is unable* to understand the nature of and consequences of the proceedings against him or *to assist properly in his defense*"[12] – the standard governing competency hearings.

III

We come at last to the defendant's present application – viz., to (1) appoint a mental health professional to conduct an independent examination of the defendant, (2) provide that Dr. Porterfield testify first, the new mental health professional next, and the defendant third, and, if that is not done, (3) staying the May 3 order for sufficient time to permit the defendant to make an emergency motion in the Court of Appeals.

*A. Mental Examination of the Defendant*

In view of what has been said already, the Court will not now appoint another mental health professional to examine the defendant. There is no motion before it to do so. It has not had the benefit of Dr. Porterfield's testimony, which could be to the effect that the defendant now is competent to stand trial and that the risk of which she has written is modest. And it is quite mindful of the fact that there is a material risk that the current application is (1) a delaying tactic in light of

---

12 18 U.S.C. § 4241(a) (emphasis added).

the Court's denial, on April 19, 2010, of defendant's request for a nine-month adjournment of the trial – now scheduled to begin on September 27, 2010,[13] and/or (2) an attempt by the defendant to manipulate the Court and the BoP in an effort to alter the security measures taken with respect to him by raising what may be unfounded or exaggerated, but in any case thus far vague and contingent, claims as to the impact of certain of those measures on his mental state. The Court will be in a better position after the May 6 and 18 hearing to decide whether a competency hearing should be held than it is now.

*B. Order of Witnesses*

Nor does the Court see any persuasive reason to hear from Dr. Porterfield before having the defendant produced in person. The purpose of having the defendant produced is threefold.

First, the Court has concluded that it is prudent and quite possibly essential to have the defendant brought before it for the purpose of explaining to him his right to be present at certain stages of these proceedings, to ensure that he understands that right, to obtain any waiver of that right that may be offered on the record in open court, and to place the Court in a position to form a judgment as to whether any such waiver is knowing, voluntary, and offered by a person competent to offer it.

Second, it is to observe the defendant and his behavior for the purpose of informing

---

13

Tr., Apr. 19, 2010, at 4-9.

the Court's determination whether a competency determination is required.[14]

Finally, it is to hear any testimony the defendant may wish to offer on the BoP Motion.

The Court of course recognizes that the defendant may elect not to testify in support of the BoP Motion, thus obviating any need for his presence on that score. But his presence may not be dispensed with so easily on the other two points. Nor is the Court persuaded that the possibility of what the defense inaccurately calls a body cavity search upon the defendant's return to the MCC would entail so great a risk to the defendant's competency as to warrant a delay.

IV

On an application for a stay pending appeal, the court considers "the likelihood of success on the merits, irreparable injury if a stay is denied, substantial injury to the party opposing a stay if one is issued, and the public interest."[15] Here, defendant has no likelihood of success on appeal both because the order appealed from is not final and therefore is not appealable and because the Court sees no material likelihood that defendant will persuade the Court of Appeals that the scheduling of defendant to testify on May 6 was an improvident exercise of discretion. While there is some theoretical possibility of irreparable injury, the Court does not regard it as sufficiently likely to warrant a stay, particularly in light of the highly qualified opinion expressed in the Porterfield

14

*See, e.g., United States v. Nichols,* 56 F.3d 403, 414 (2d Cir. 1995) ("In deciding that an evidentiary hearing [as to competency] is unnecessary, a court may rely not only on psychiatrists' reports indicating competency but also on its own observations of the defendant.").

15

*Mohammed v. Reno,* 390 F.3d 95, 100 (2dCir. 2002).

declaration. And there is a public interest in the orderly progression of this case to trial.

V

For the foregoing reasons, defendant's letter application of May 3, 2010[16] is denied in all respects.

SO ORDERED.

Dated: May 4, 2010

Lewis A. Kaplan
United States District Judge

16 Defense counsel again are reminded that this Court requires that applications for relief be made by motion supported by any necessary affidavits or declarations and by a memorandum of law. While the Court has overlooked their failure to proceed in a proper manner on this occasion, they should not count on similar dispensation in the future.