UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA,


           -against-                                    S10 98 Crim. 1023 (LAK)


AHMED KHALFAN GHAILANI,

                        Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION

        Appearances:

                    Michael E. Farbiarz
                    Harry A. Chernoff
                    Nicholas Lewin
                    Sean S. Buckley
                    Assistant United States Attorneys
                    PREET BHARARA
                    UNITED STATES ATTORNEY


                    Peter Enrique Quijano
                    Michael K. Bachrach
                    Steven Zissou
                    *Attorneys for Defendant*


LEWIS A. KAPLAN, *District Judge.*

        Ahmed Khalfan Ghailani, an alleged member of Al Qaeda, was indicted in this Court

in 1998 and charged with conspiring with Usama Bin Laden and others to kill Americans abroad by,

among other means, bombing the United States Embassies in Nairobi, Kenya, and Dar es Salaam,

Tanzania, bombings in which 224 people reportedly were killed.  Years later, he was captured abroad

by a foreign state and subsequently turned over to the Central Intelligence Agency ("CIA").  He was

2

held and interrogated by the CIA at one or more secret locations outside the United States for a substantial period.  He then was shifted to a secure facility at the United States naval base at Guantanamo where he remained until June 2009, at which time he was produced in this Court for prosecution on the indictment.  Ghailani now moves to dismiss the indictment on the ground that he was tortured by the CIA in violation of his rights under the Due Process Clause of the Constitution.

I

The Due Process Clause of the Fifth Amendment is "a historical product"[1] the roots of which date at least to 1215, when King John pledged in the Magna Carta that "[n]o freeman shall be captured or imprisoned or disseised or outlawed or exiled or in any way destroyed, nor will we go against him or send against him, except by the lawful judgment of his peers or by the law of the land."[2]  The phrase "due process of law" appears first to have been used in a statutory rendition of that pledge in 1354.[3]  Its history was recapitulated by Blackstone in the treatise that was at the heart

---

[1]
    *Jackman v. Rosenbaum Co.,* 260 U.S. 22, 31 (1922).

[2]
    Magna Carta c. 39, *reprinted in* BERNARD SCHWARTZ, 1 THE BILL OF RIGHTS: A DOCUMENTARY HISTORY 12 (1971).

[3]
    "No man of what state or condition he be, shall be put out of land or tenement, nor taken, nor imprisoned, nor disinherited, nor put to death, without being brought in answer by due process of the law."  28 Edw. III, c. 3.

of the professional training of many of the Founders of our nation.[4]  So the concept of due process of law was familiar ground when the Framers formulated the Fifth Amendment.

The Fifth Amendment provides in relevant part:

> "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury. . . ; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."

It thus draws together protections of individual rights with respect to (a) specific aspects of the criminal process, and (b) private property.  The language of the Due Process Clause itself, however, is far from definite.  While it "would seem to refer solely and simply to procedure, to process in court, and therefore to be so limited that 'due process of law' would be what the legislative branch enacted it to be,"[5] it has proved to be of broader scope.  It "is a summarized constitutional guarantee of respect for those personal immunities which . . . are 'so rooted in the traditions and conscience of our people as to be ranked as fundamental' . . . or are 'implicit in the concept of ordered liberty.'"[6] It has come to have both the procedural component implied by its placement in a list of specific rights in the criminal process and a substantive component that "protects the individual against 'the [government's] exercise of power without any reasonable justification in the service of a legitimate

---

[4]
    1 WILLIAM BLACKSTONE, COMMENTARIES ON THE LAWS OF ENGLAND 123-24, 129-30 (1765).

[5]
    CONGRESSIONAL RESEARCH SERVICE, LIBRARY OF CONGRESS, THE CONSTITUTION OF THE UNITED STATES OF AMERICA: ANALYSIS AND INTERPRETATION 1344 (1996).

[6]
    *Rochin v. California,* 342 U.S. 165, 169 (1952) (quoting *Snyder v. Commonwealth of Massachusetts,* 291 U.S. 97, 105 (1934), and *Palko v. State of Connecticut,* 302 U.S. 319, 325 (1937), respectively).

4

governmental objective.'"[7]

In this case, Ghailani has not identified explicitly the component of his due process rights that allegedly was violated.  But he argues that both the CIA's use of "enhanced interrogation techniques"[8] – in his word, torture – to question him and the fact that use of those techniques was authorized by "the highest levels of our government" are "'so fundamentally unfair', 'shocking to our traditional sense of justice', and 'outrageous'" that due process requires the indictment to be dismissed.[9]  He thereby invokes substantive rather than procedural due process.[10]

The government does not here respond to Ghailani's assertions as to what was done to him while in CIA custody.  Nor does it join issue on the question whether those assertions, if true, violated Ghailani's right to due process of law.  Rather, it argues that Ghailani's allegations of pretrial custodial abuse are immaterial to this motion because dismissal of the indictment would not be a proper remedy for the government's alleged misconduct.  In other words, the government argues that there is no legally significant connection between the alleged torture and any deprivation of the

---

[7]    *United States v. Stein,* 495 F. Supp. 2d 390, 411 (S.D.N.Y. 2007) (quoting *County of Sacramento v. Lewis,* 523 U.S. 833, 845-46 (1998)), *aff'd,* 541 F.3d 130 (2d Cir. 2008).

[8]    *See generally* Def. Speedy Trial Mem. [DI 841], Ex. B ¶ 6 (declaration describing purported public knowledge of covert CIA detention and interrogation program).

[9]    Def. Br. [DI 926] 20.

[10]    The Due Process Clause protects individuals against deprivation by the government of their "life, liberty, or property without due process of law."  In its substantive aspect, this "limits what the government may do in both its legislative . . . and its executive capacities."  *County of Sacramento*, 523 U.S. at 846.  "[O]nly the most egregious official conduct can be said to be 'arbitrary in the constitutional sense," *id.*, thereby constituting a substantive due process violation.  For these purposes, "the cognizable level of executive abuse of power [is] that which shocks the conscience."  *Id.*

defendant's liberty that might result from this criminal prosecution.

If the government is correct in contending that Ghailani would not be entitled to dismissal of this criminal prosecution on due process grounds even if he was tortured in violation of his constitutional rights, it would be unnecessary for this Court to address the details of Ghailani's alleged treatment while in CIA custody.  Nor in that event would it be appropriate to express any opinion as to whether that treatment violated his right to due process of law.[11]  The Court therefore passes directly to consideration of the government's argument.


II

The Due Process Clause, so far as is relevant here, protects against deprivations of liberty absent due process of law.  The deprivation of liberty that Ghailani claims may occur if this case goes forward is his imprisonment in the event of conviction.  In seeking dismissal of the indictment, however, he does not deny that he is being afforded every protection guaranteed to all in the defense of criminal prosecutions.  Rather, Ghailani in effect argues that the case should be dismissed to punish the government for its mistreatment of him before he was presented in this Court to face the pending indictment.

For a due process violation to result in consequences adverse to the government in a criminal case – for example, the suppression of evidence or the dismissal of an indictment – there must be a causal connection between the violation and the deprivation of the defendant's life or

---

[11]

*United States v. Stein,* 435 F. Supp.2d 330, 361 (S.D.N.Y. 2006) ("It is a venerable maxim of constitutional construction that courts should decide no more than is necessary.") (citing *Ashwander v. Tenn. Valley Auth.,* 297 U.S. 288, 341 (1936) (Brandeis, J., concurring), *aff'd,* 541 F.3d 130 (2d Cir. 2008).

liberty threatened by the prosecution.[12]   That is to say, relief against the government in a criminal

case is appropriate if, and only if, a conviction otherwise would be a product of the government

misconduct that violated the Due Process Clause.   For only in such circumstances may it be said that

the deprivation of life or liberty that follows from a criminal conviction flows from the denial of due

process.   This conclusion thus rests directly on the text of the Due Process Clause itself.

This point finds support also in the Supreme Court's consistent holdings that illegality

in arresting or obtaining custody of a defendant does not strip a court of jurisdiction to try that

defendant.   "An illegal arrest, without more, has never been viewed as a bar to subsequent

prosecution, nor as a defense to a valid conviction."[13]

This doctrine, better known as the *Ker-Frisbie* rule,[14] dates back well over a century

and "rests on the sound basis that due process of law is satisfied when one present in court is

convicted of a crime after being fairly apprized of the charges against him and after a fair trial in

accordance with constitutional procedural safeguards."[15]   The Court repeatedly has reaffirmed this

doctrine even as the concept of substantive due process has expanded.[16]   Moreover, the Court

---

[12]

     *See, e.g., Rochin v. California,* 342 U.S. 165, 173 (1952) ("[C]onvictions cannot be brought about by methods that offend 'a sense of justice.'"); *see also Breithaupt v. Abram*, 352 U.S. 432, 435 (1957) (recognizing that evidence obtained by government conduct that "shock[s] the conscience" may not be used to support a criminal conviction).

[13]

     *United States v. Crews*, 445 U.S. 463, 474 (1980).

[14]

     *See Ker v. Illinois*, 119 U.S. 436 (1886); *Frisbie v. Collins*, 342 U.S. 519 (1952).

[15]

     *Frisbie*, 342 U.S. at 522.

[16]

     *See, e.g.*, *United States v. Alvarez-Machain*, 504 U.S. 655, 660-62 (1992); *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1039-40 (1984) ("The 'body' or identity of a defendant or

explicitly has refused to adopt an exclusionary rule that would operate on the defendant's person:

> "Our numerous precedents ordering the exclusion of such illegally obtained evidence assume implicitly that the remedy does not extend to barring the prosecution altogether.  So drastic a step might advance marginally some of the ends served by exclusionary rules, but it would also increase to an intolerable degree interference with the public interest in having the guilty brought to book."[17]

 "[A defendant] is not himself a suppressible 'fruit,' and the illegality of his detention cannot deprive the Government of the opportunity to prove his guilt through the introduction of evidence wholly untainted by the police misconduct."[18]  Rather, the proper remedy is money damages or criminal prosecution of the offending officers.[19]

This case follows *a fortiori* from the rationale of the *Ker-Frisbie* rule.  Ghailani is charged here with complicity in the murder of 224 people.  The government here has stated that it will not use anything that Ghailani said while in CIA custody, or the fruits of any such statement,[20] in this prosecution.  In consequence, any deprivation of liberty that Ghailani might suffer as a result of a conviction in this case would be entirely unconnected to the alleged due process violation.  Even

---

respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded than an unlawful arrest, search, or interrogation occurred."); *Gerstein v. Pugh*, 420 U.S. 103, 119 (1975) ("[I]llegal arrest or detention does not void a subsequent conviction.").

[17] *United States v. Blue*, 384 U.S. 251, 255 (1966).

[18] *United States v. Crews*, 445 U.S. 463, 474 (1980).

[19] *See, e.g., Hampton v. United States*, 425 U.S. 484, 490 (1976).

[20] The government has identified one possible exception: a percipient witness whose identity remains classified and whose testimony may constitute fruit derived from statements made by the defendant in response to interrogations while in CIA custody.  The government maintains that there is no basis for suppressing this potential witness's testimony, and the issue is *sub judice* before this Court.  *See* DI 926, 927.

if Ghailani was mistreated while in CIA custody and even if that mistreatment violated the Due Process Clause, there would be no connection between such mistreatment and this prosecution.  If, as *Ker-Frisbie* holds, the illegal arrest of a defendant is not sufficiently related to a prosecution to warrant its dismissal, it necessarily follows that mistreatment of a defendant is not sufficient to justify dismissal where, as here, the connection between the alleged misconduct and the prosecution is non-existent or, at least, even more remote.  Certainly the government should not be deprived here "of the opportunity to prove his guilt through the introduction of evidence wholly untainted by [any government] misconduct."[21]  Any remedy for any such violation must be found outside the confines of this criminal case.

United States v. Toscanino[22] is not to the contrary.  The defendant in that case allegedly was brought before the trial court as a result of being abducted and tortured by government agents, conduct that he claimed violated his right to due process of law.  Upon conviction, he appealed on the ground that the agents' actions violated his right to due process and that the district court's jurisdiction over him was a product of that violation.[23]  The Second Circuit reversed the conviction and remanded to enable the defendant to attempt to prove that the agents' conduct was sufficiently outrageous to have violated the Due Process Clause.[24]  But *Toscanino* does not support Ghailani here.

---

[21]     *Crews,* 445 U.S. at 474.

[22]     500 F.2d 267 (2d Cir. 1974).

[23]     *Id.* at 268.

[24]     *Id.* at 275-76.

As an initial matter, *Toscanino* was concerned with "denying the government the fruits of its exploitation of any deliberate and unnecessary lawlessness on its part."[25]  To whatever extent it is authoritative, a subject discussed below, the case is limited to situations in which the alleged outrageous government conduct brought the defendant within the court's jurisdiction, and thus was a but-for cause of any resulting conviction, and compromised the fairness and integrity of the criminal proceedings.  There is no similar connection between Ghailani's alleged mistreatment while in CIA custody and this prosecution.  Hence, to whatever extent that *Toscanino* remains viable, it does not apply here.

Second, as suggested already, it is doubtful that *Toscanino* remains authoritative. Several circuits have expressed doubt as to its continued viability in light of subsequent Supreme Court decisions.[26]  Moreover, the Second Circuit itself subsequently has relied heavily on the *Ker-Frisbie* rule in deciding a case very similar to the one currently before this Court.

In *Brown v. Doe*,[27] a defendant convicted of felony murder and robbery in state court sought federal habeas corpus relief on the ground, *inter alia*, that his substantive due process rights had been violated by repeated brutal beatings by police following his arrest.[28]  He alleged that this pretrial custodial abuse "was so outrageous and so offensive to due process of law that it bar[red]

---

[25]

   *Id.* at 275.

[26]

   *See, e.g.*, *United States v. Best*, 304 F.3d 308, 312 (3d Cir. 2002); *United States v. Matta-Ballesteros*, 71 F.3d 754, 763 (9th Cir. 1995); *United States v. Mitchell*, 957 F.2d 465, 470 (7th Cir. 1992); *United States v. Darby*, 744 F.2d 1508, 1531 (11th Cir. 1984).

[27]

   2 F.3d 1236 (2d Cir. 1993).

[28]

   *Id.* at 1239.

his prosecution and require[d] dismissal of the indictment."[29]

In affirming the district court's denial of relief, the Second Circuit held that the Due Process Clause was the appropriate source of constitutional protection against the alleged pretrial abuse, but it concluded that the requested remedy was inappropriate.  In light of the *Ker-Frisbie* line of cases, the court reasoned that "if there is no authority for barring the prosecution of a defendant who was illegally taken into custody, we are in no position to strip New York State of its power to try a defendant . . . who was lawfully arrested and convicted on untainted evidence."[30]  Moreover, "the wrong committed by the police has its own remedies.  It is unnecessary to remedy that wrong by absolving [petitioner] of his own crime, and there is no interest of justice served by a result in which the community suffers two unpunished wrongs."[31]  The court concluded that "[t]he remedy of dismissal is not required to vindicate [petitioner's] due process rights.  Other and more appropriate remedies are available," potentially including civil remedies under 42 U.S.C. § 1983 and criminal prosecution of the police who assaulted him.[32]

*Brown* confirms this Court's view that *Toscanino,* if it retains any force, does so only where the defendant's presence before the trial court is procured by methods that offend the Due Process Clause.  Dismissal of the indictment in the absence of a constitutional violation affecting the fairness of the criminal adjudication itself is unwarranted.

---

[29] *Id.* at 1242.

[30] *Id.* at 1243.

[31] *Id.*

[32] *Id.*

*Conclusion*

If, as Ghailani claims, he was tortured in violation of the Due Process Clause, he may have remedies.  For the reasons set forth above, however, those remedies do not include dismissal of the indictment.  The defendant's motion to dismiss the indictment on the grounds of allegedly outrageous government conduct in violation of his Fifth Amendment due process right is denied.[33]

SO ORDERED.

Dated:        May 10, 2010

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)

---

[33]    In light of its holding that dismissal is not warranted, the Court need not address the government's second legal argument that the Due Process Clause of the Fifth Amendment does not apply to the alleged government misconduct at issue.