UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,

-against-

AHMED KHALFAN GHAILANI,

                                    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

FILED WITH COURT
SECURITY OFFICER
7/12/10

S10 98 Crim. 1023 (LAK)

**SUPPLEMENT TO OPINION RULING ON DEFENDANT'S MOTION TO DISMISS THE INDICTMENT FOR ALLEGED DEPRIVATION OF SPEEDY TRIAL**

LEWIS A. KAPLAN, *District Judge.*

Most of the information relevant to the Court's speedy trial analysis has been set forth in the opinion filed publicly today (the "Opinion"). There are two major exceptions: information regarding (1) the historical development and operation of the CIA's Rendition, Detention, and Interrogation ("RDI") Program, referred to in the Opinion as the CIA Program, and (2) Ghailani's personal experience in that program, including why he was identified as a program candidate, certain conditions of his confinement, and the specific interrogation techniques used on the defendant. This Supplement contains classified material pertinent to the Court's ruling today on the defendant's motion to dismiss the indictment on speedy trial grounds.

*I.      The RDI Program*

The declaration ███████████████████████████████ of the

2

CIA described the history and organization of the RDI Program in some detail.[1]

Immediately following the attacks of September 11, 2001, President Bush authorized new steps to combat international terrorism.[2] ████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

In 2002, the CIA ███████████████ establish the RDI Program pursuant to which the CIA maintained clandestine facilities abroad at which suspected terrorists were detained, interrogated, and debriefed.[4] The program was directed at obtaining intelligence from "an extremely limited number of terrorists": only those thought to possess the most valuable intelligence information, related to threats against the United States or the locations of Al Qaeda's most prominent leaders, were considered candidates for the program.[5]

The CIA's description of the interrogation techniques employed by the RDI Program is consistent with the accounts presented in Ghailani's motion papers.[6] A unique interrogation

---

[1]   CIA Decl., Dec. 10, 2009 ████

The defense has offered no evidence contradicting that description of the RDI Program.

[2]   *Id.* ¶ 7.

[3]   ████

[4]   *Id.*

[5]   *Id.* ¶ 9.

[6]   *See, e.g.,* Def. Br. 4-9, 59-67; Def. Br. Ex. B [hereinafter the "Newell Decl."].

3

program  was  developed  for  each  detainee ███████████████████████████
██████████████████████████████████████████████████████████████
███████████████████████████ In the program's early years, use of EITs on

specific detainees required authorization by the director of the CIA Counter Terrorism Center.  Later

this authorization had to come from the Director of the CIA.[8]

██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████

---

[7] ████████████████

[8] *Id.* ¶ 12.

[9] ██████████████████████████████████████████████████████

[10] ██████████████████████████████████████████████████████

[11] ██████████████████████████████████████████████████████

4

Accordingly, it would have been impossible for the government simultaneously to interrogate Ghailani in the manner it deemed necessary to procure useful intelligence and to prosecute him on this indictment.[12]

II.    *Ghailani's Experience in the RDI Program*

Ghailani was captured on July 24, 2004 by Pakistani authorities, ███████████ ████████████████████████████████ when he was transferred to exclusive U.S. control.[13]  For purposes of the Court's speedy trial analysis, then, the "length of delay" at issue is ██████████████████████████ when Ghailani was moved into exclusive U.S. custody, until June 9, 2009, when he was arraigned in this Court.[14]

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

---

[12]  The parties agree on this point. *See, e.g.,* Def. Br. 30-31; Gov't Br. 10-11, 58-60. ████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

[13]  *Id.* ¶¶ 18, 23; *see also* Farbiarz CIA Decl. Ex. H ███████████████████

[14]  Ghailani concedes that the years prior to his capture and ████████████████ do not count against the government in the speedy trial analysis. Reply Br. 8-9.

[15]  ████████████████████

5



16

17

18

19



6



20

21

22

23

24

25

26



7

███████████████████████

## III.   Discussion

The foregoing is pertinent to three particular aspects of the speedy trial analysis.

First, as the Opinion discusses, Ghailani argues that the government's concededly legitimate decision to delay this prosecution to permit CIA interrogation is insufficient to justify the two years that it took because he was tortured and mistreated in the course of it.

As detailed above, Ghailani was subjected to some severe treatment, all or most of it pursuant to specific authorization from the CIA and the Department of Justice. Without minimizing the discomfort and pain that he suffered, it bears emphasis that these enhanced techniques were used for only portions of ███████████████████████ days he spent in CIA custody, ████████████

███████████████████████████████████████████████████

Even if Ghailani were right that any delay attributable specifically to his alleged physical mistreatment by the CIA was unjustified within the *Barker* framework, the period during which he was subjected ████████████████ that it would not be material to the larger delay analysis.

███████████████████████████████████████████████████

---

27

███████████████████████████████████████████████████

8

[REDACTED]

Second, the Opinion does not address the fact that [REDACTED]

[REDACTED]

Only by giving his captors what they wanted could a detainee have hoped to improve his lot.  Thus, unlike the immaterial [REDACTED] delay of this prosecution that might be attributed to the physical means employed to coerce Ghailani to cooperate, the entire delay attributable to Ghailani's placement in the RDI Program, with its goal of inducing a state of learned helplessness, was quite substantial.  Nevertheless, this does not warrant a result other than that reached in the Opinion.

Ghailani's placement in the RDI Program was based on a reasonable, good faith judgment that it was important to national security.  It yielded important intelligence.  Those national security interests are sufficient to justify this two-year delay, at least given the minimal prejudice to those of Ghailani's interests protected by the Speedy Trial Clause.  Whether those interests would have justified the same delay if more prejudice had been shown, or a longer delay even in the absence of any prejudice,[28] need not be decided here.

Finally, the Opinion notes Ghailani's argument that his intelligence value declined rapidly while he was in CIA custody and his contention that at least some portion of the two-year delay therefore weighs against the government.  That argument could not be addressed properly in the Opinion and therefore is dealt with here.

[REDACTED]

---

[28]

Cf. Hamdi v. Rumsfeld, 542 U.S. 507, 521 (2004) ("[W]e agree that indefinite detention for the purpose of interrogation is not authorized [by the AUMF].").

█████████████████████████████████████████████

████████████████████████And the government has submitted evidence that he provided valuable

information throughout.[29]

Ghailani lived through this entire period and, subject to the limits of human memory,

knows what he told the CIA and when he conveyed that information. He has at least some awareness

of its significance. His attorneys have had access to summaries of hundreds of classified reports

documenting Ghailani's interrogation. Yet Ghailani has pointed to nothing that casts doubt on the

government's conclusion, which the Court credits, that he provided useful information throughout the

entire two years.

To be sure, one can postulate a case in which the intelligence yield during later portions

of interrogation might be so small as to render further delay of a criminal prosecution in favor of

continued intelligence-oriented interrogation illegitimate for speedy trial purposes, especially if the

defendant were prejudiced by the incremental delay. The short answer to that hypothetical, however,

is that this is not that case.

*   *   *

---

29  ██████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

10

This Supplement contains classified information, the public disclosure of which would pose a serious danger to the national security. It shall be filed with the Court Security Officer and remain in an appropriate secure facility in accordance with established procedures until further ordered by this Court.

SO ORDERED.

Dated:      July 12, 2010

_____
Lewis A. Kaplan
United States District Judge